

A Massachusetts Limited Liability Partnership

*Jamie Hoxie Solano, Esq.*

**June 29, 2026**

<u>**VIA ECF**</u>
The Honorable Zahid N. Quraishi
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

Re:   ***Advanced Flower Capital Inc., et al., v. Bloc Dispensary LLC, et al.***<u>**,
Case No. 3:26-cv-7332, Response to AFC's Letter Regarding Removal**</u>

Dear Judge Quraishi,

Defendants Bloc Dispensary LLC, SRG 1761 North Olden LLC, SRG 1474 Prospect LLC, SRG Waretown LLC, Hayden Gateway LLC, Pier Cove LLC, SRG 272 Main Street LLC, and SRG Hi Park LLC (collectively, "Justice" or "Defendants"), write in response to the June 23, 2026 and June 26, 2026 letters from Advanced Flower Capital Inc. and AFC Agent LLC (collectively, "AFC" or "Plaintiffs") seeking to schedule a hearing on AFC's forthcoming motion for a Preliminary Injunction to secure access to the subject cannabis facility and information rights.

Defendants first address the question of continuing the Preliminary Injunction Hearing. Defendants have no objection to continuing the hearing to July 16.  If the Court can accommodate that date, Defendants can as well. However, given that AFC continues to steal Defendants' money, misuse its DACA to prevent Defendants from running their business, and prepare to unlawfully auction off Defendants' company on July 28, Defendants respectfully request that the hearing not be continued beyond that week.

Defendants do, however, strongly dispute AFC's characterization of the present situation. Defendants note that AFC has ignored repeated invitations to visit and inspect the facility and to access the information it seeks; and that this morning, at 10:13 a.m., AFC (through counsel) accepted Defendants' weeks-long offers to access the facility. Thus, AFC's need for emergent relief have been largely mooted. Moreover, AFC's letters neglect to mention that AFC seeks a receiver to take control of Defendants' businesses on the basis of this purported manufactured crisis. When the Court examines the situation, it will see that AFC does not really want access or information because it has already been offered those things. Instead, it is refusing to accept the offers purely for strategic reasons, a strategy that should not be rewarded.

### Access to the Facility

Defendants have offered AFC multiple dates to enter and inspect, and AFC has declined to accept every one of those invitations, preferring instead to manufacture a pretext for a receiver. During the month of May, Defendants agreed to permit the request for inspection, but there had been some prior back-and-forth about whether Section 5.4 of the Credit Agreement giving "AFC and its

**Boston**        **Miami**        **New York**        **New Jersey**

Page 2 of 4

representatives and agents" also included the right for AFC to bring Defendants' competitors into its facility.[1]

On May 28, 2026, AFC (through counsel) abruptly changed AFC's position, now stating for the first time that AFC was willing to send only an AFC representative. AFC's May 28th communication demanded that Defendants confirm within two hours that the inspection could proceed the next morning (less than 24 hours) or else "we will treat your non-response as a refusal," and purported to reserve all rights under the U.C.C.

On May 29th, Defendants' counsel responded that less than two hours to respond and 24 hours' notice was insufficient, but that AFC was welcome to inspect the following week, or the week after that, comporting with the "reasonable notice" requirement in the Credit Agreement.

Defendants placed a single, reasonable condition on the invitation for access and inspection: through counsel, Defendants asked AFC to confirm that if AFC brought Defendants' competitors into Defendants' cannabis factory, AFC would agree to ensure that those competitors respected the confidentiality of Defendants' proprietary information.

Instead of responding, or accepting the invitation to inspect, AFC filed its nineteen-page emergency motion for a preliminary injunction, asking a state court judge to appoint a receiver on the grounds that it was supposedly being denied access. AFC had apparently already written that lengthy motion, and did not want the fact that Defendants had just offered them access to impede AFC's desire for a receiver over Defendants' property. AFC ignore Defendants' offer entirely.

Defendants eliminated all ambiguity on June 12th by sending AFC a "Notice of Continued Availability for Inspection And Resolution Of Confidentiality Concerns." The Notice made clear that the offer to inspect on 48-hour notice remained open. The letter ended by stating: "If AFC is acting in good faith and genuinely wishes to evaluate the physical collateral rather than score points for its litigation strategy, we are available to discuss this. If we can work through the confidentiality concerns, you can inspect as early as this coming Monday."

AFC ignored the letter. Instead, it sent a letter to this Court on June 23rd, claiming that "[e]very day this case remains in federal court improperly is a day AFC cannot obtain the urgent relief [access for an inspection] it seeks . . . ." (Dkt. 10 at 5).

Defendants' concerns about confidentiality are serious concerns. The last time Defendants allowed AFC to bring its competitors into its facility was over a year ago. After that inspection, a rival cannabis company called Cresco apparently gathered sufficient proprietary information about Defendants' operations to send AFC a letter of intent to purchase Defendants' assets, more than a year before the maturity of the loan. Defendants did not know anything about Cresco's offer until AFC introduced that letter of intent at the prior Preliminary Injunction hearing before this Court. That was the first time Defendants learned that AFC had used the inspection request to try to sell Defendants' business to a competitor.

---

[1] The documents referenced in this letter will be attached as exhibits to Defendants' forthcoming response to the order for show cause on removal.

**Boston       Miami       New York       New Jersey**

Page 3 of 4

In sum, Defendants have a not-unfounded concern that AFC intends to leverage its inspection rights into an opportunity to transfer Defendants' confidential information to a competitor. That concern must be addressed. AFC has a right to inspect, but Defendants have a right not to let their competitors into the factory without restriction. The loan agreement, after all, grants the inspection rights to AFC and its "agents." It does not give inspection rights to Defendants' competitors.

At 10:13 a.m. this morning, AFC's counsel sent Defendants a letter responding to Defendants' prior offers to inspect and changing its tune, stating: **"As reflected in your prior correspondence, Justice has confirmed that it is prepared to extend the opportunity for Mr. Neville and a designated advisor to access and visit the facility."** This latest letter proceeds to identify the proposed visitors, and represents that those visitors are "prepared to fully comply with the requirements, restrictions, and obligations set forth in Section 17.7 [the confidentiality provision] of the Credit Agreement."

As of this morning, AFC has acknowledged in writing that Defendants have been offering access as recently as June 18th, and implicitly acknowledged that Justice's confidentiality concerns were reasonable. Expedited consideration is not warranted on this basis.

### Information Requests

The other stated justification for AFC's requested preliminary injunction is that Defendants are supposedly in breach of their obligation to respond to information requests. That allegation is equally untrue.

On a weekly basis, Defendants are required to provide (and, indeed, have been providing) AFC with a 13-week cash flow summary for New Jersey. Approximately two weeks ago, AFC asked for the same information for Pennsylvania, and Defendants obliged the following week. Defendants upload their financials for each entity to a shared folder for AFC's review on a monthly basis, and do so for HoldCo on a quarterly basis. Defendants complied with these information requests for years, and continue to comply. To Defendants' knowledge, there have been no problems, and AFC has not previously identified any concerns.

AFC's letters and previously filed preliminary injunction motion are deliberately vague about what is supposedly being withheld. Defendants infer that AFC's claim can only concern AFC's request from June 5, 2026, in which AFC's CEO (Dan Neville) sent a series of questions about Defendants' cannabis plants, presumably in anticipation of foreclosure and sale. The email asked, for example, for cannabis cultivation, production, planting, and harvest schedules, by cannabis strain and phenotype. AFC also demanded METRC inventory reports, dispensary floor plans and employee listings, and salary information. The email demanded a response by the following week.

Defendants responded in writing by pointing out that AFC had just told the Third Circuit that it has no security interest or lien in any cannabis or anything related to cannabis. The parties' loan agreements purport to carve out cannabis and cannabis-related property, making clear that AFC (a public company trying to stay out of "illegality") has no lien in anything plant-touching. This request simply asked AFC to clarify why the cannabis-related information was required by the Credit

**Boston       Miami       New York       New Jersey**

Page 4 of 4

Agreement, which seems to exclude it. The email concluded: "We are not saying we will not produce these things. Rather, our position is that are not seeing any obligation to do so, and we are going to require some additional basis to support your demand."

AFC never responded. Instead, more than three weeks later, AFC turned around and filed an emergency motion to appoint a receiver, in part based on Defendants' purported breach of AFC's request for information.

Given that AFC ignored Defendants' questions, and never raised the request for cannabis-related information again, Defendants reasonably concluded that AFC's silence was an implicit acknowledgement that had no right to cannabis-related information under the parties' loan agreement. If AFC responds that it has an interest in Defendants' cannabis, then Defendants (without conceding that premise) will provide AFC information relating to that cannabis. AFC need not wait for a preliminary injunction to access the information it seeks.

### Scheduling the Parties' Dueling Preliminary Injunction Requests

AFC's letters ask this Court to ensure that its request for a Preliminary Injunction regarding access and information be considered before Defendants' request for a Preliminary Injunction preventing AFC from, among other things, liquidating Defendants' business through a non-judicial foreclosure and auction scheduled for late July.

AFC's request to inspect the facility is now moot. AFC could easily moot its information request by simply explaining why it believes it is entitled to Justice's plant-specific information. If AFC follows through with its stated the intention of re-filing the state court preliminary injunction motion with this Court (as opposed to re-writing that motion in light of the facts set forth in this letter), then Defendants will promptly respond, and this Court will be well-positioned to adjudicate whether there is any need for AFC's requested emergent relief. Thus, Defendants believe hearing time is unnecessary and is acting to serve as a distraction from Defendants' requested relief. To the extent this Court disagrees, Defendants ask that the Motions be heard contemporaneously in light of Defendants' need for emergent relief prior to July 28.

Respectfully submitted,

*s/ Jamie Hoxie Solano*
Jamie Hoxie Solano

**Boston      Miami      New York      New Jersey**