**DYNAMIS LLP**
Jamie Hoxie Solano, Esq.
NJ Bar No. 426422024
200 Connell Drive
Berkeley Heights, NJ 07922
(973) 295-5495
JSolano@dynamisllp.com

Michael B. Homer, Esq.*
Constantine Economides, Esq.*
175 Federal Street, Suite 1200
Boston, MA 02110
(617) 693-9732
MHomer@dynamisllp.com
CEconomides@dynamisllp.com
*Pro Hac Vice forthcoming

*Counsel for Defendants/Counter-Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADVANCED FLOWER CAPITAL, INC. and AFC AGENT, LLC <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> BLOC DISPENSARY LLC, SRG 1761 NORTH OLDEN LLC, SRG 1474 PROSPECT LLC, SRG WARETOWN LLC, HAYDEN GATEWAY LLC, PIER COVE LLC, SRG 272 MAIN STREET LLC, and SRG HI PARK LLC <br><br> Defendants/Counter-Plaintiffs, and <br><br> JG HOLDCO LLC, JON LOEVY, AND MICHAEL KANOVITZ, <br><br> Counter-Plaintiffs. | **Civil Action No. 3:26-cv-7332-ZNQ-JBD** <br><br><br> **DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE** |

# TABLE OF CONTENTS

INTRODUCTION......................................................................................................1

RELEVANT BACKGROUND...................................................................................3

   A.  Procedural History ........................................................................................3

   B.  Complaint Allegations ..................................................................................5

   C.  Key Terms Defined in the Relevant Agreements .........................................7

ARGUMENT .............................................................................................................8

   A.  Removal is Proper Because This Court Has Federal Question and
   Supplemental Jurisdiction Over All Claims. ......................................................8

        a.  By Requesting a Declaratory Judgment as to its Liens in Borrower
           Assets, Plaintiffs' Complaint Necessarily Raises Embedded Federal
           Issues as to the CSA……………………………………………………10

        b.  The Complaint raises a federal issue that is actually disputed………..21

        c.  Plaintiffs' Complaint presents a substantial federal issue……………22

        d.  This case is capable of resolution without disrupting the federal-state
           balance…………………………………………………………………24

   B.  All Other Requirements For Proper Removal Have Been Satisfied.............24

   C.  AFC's Purportedly Urgent Need For Remand Is Manufactured Pretext......24

        a.  AFC is Not Being Denied Access to Inspect the Facility……….…...27

        b.  AFC is Not Being Denied Any Required Information……………..31

CONCLUSION .......................................................................................................34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*,
  769 F.3d 204 (3d Cir. 2014) ....................................................................................9

*Alter Business Advisors, LLC v. DOC App, Inc.*,
  2024 WL 2991080 (M.D. Fla. June 14, 2024) ......................................................19

*Apical Biotek, LLC v. Maitri Holdings, LLC*,
  No. 25-1396, 2026 WL 177927 (3d Cir. Jan. 22, 2026)......................4, 17, 18, 24

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
  463 U.S. 1 (1983) ...................................................................................................10

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005) ......................................................................................... Passim

*Gremo v. Bayer Corp.*,
  469 F. Supp. 3d 240 (D.N.J. 2020).........................................................................25

*Gunn v. Minton*,
  568 U.S. 251 (2013) ..........................................................................................10, 22

*Kindred Hospitals East, LLC v. Local 464A United Food and Commercial Workers Union Welfare Service Benefit Fund*,
  No. 21-10659, 2021 WL 4452495 (D.N.J. Sept. 29, 2021)...................................18

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
  772 F.3d 158 (3d Cir. 2014) ...............................................................................9, 10

*MHA LLC v. HealthFirst, Inc.*,
  629 F. App'x 409 (3d Cir. 2015)............................................................................21

*MRC44, LLC v. City of Miami*,
  561 F. Supp. 3d 1288 (S.D. Fla. 2021)..............................................................19, 20

*PharmaCann Penn, LLC v. BV Development Superstition RR, LLC*,
  318 F. Supp. 3d 708 (E.D. Pa. 2018) .............................................................. Passim

*Smith v. Kansas City Title & Trust Co.*,
  255 U.S. 180 (1921) ...............................................................................11, 22

*Stout v. Novartis Pharm., Corp.*,
  Nos. 08-856; 07-2774; 090095; 09-916; 07655, 2009 WL 4576130 (D.N.J. Nov.
  30, 2009) ................................................................................................21

**Statutes**

18 U.S.C. § 1956 .......................................................................................12

18 U.S.C. § 1957 .......................................................................................12

21 U.S.C. § 812 ........................................................................................12

21 U.S.C. § 841 ........................................................................................12

21 U.S.C. § 881 ........................................................................................22

26 U.S.C. § 6335 .......................................................................................12

28 U.S.C. § 1331 ...............................................................................9, 25, 34

28 U.S.C. § 1367 .......................................................................................25

28 U.S.C. § 1441 ...................................................................................26, 34

28 U.S.C. § 1446 ...................................................................................26, 34

N.J.S.A. § 12A:9-610 ...............................................................................7, 8

U.S. Const. art. III ....................................................................................25

U.S. Const. art. VI ....................................................................................18

**Other Authorities**

U.C.C. § 9..............................................................................................12, 13

Defendants submit the following Response to this Court's Order to Show Cause as to why this matter should not be remanded ("OSC") (Dkt. No. 11).[1]

## **INTRODUCTION**

AFC's suggestion that this case presents a straightforward foreclosure issue is false. The relief AFC seeks depends directly on resolution of questions of federal law.

Taking a step back, AFC has made a fortune loaning money to cannabis companies at predatory interest rates, terms it could impose only because so few other companies were willing to risk making loans in a federally illegal industry. AFC attempted to surmount that illegality problem with what it hoped would be a work-around: it wrote its loan documents to exclude security interests inconsistent with "Cannabis Law." It kept the term ambiguous in its Security Agreement (a scheme that allowed it to foreclose on many other borrowers' federally illegal assets over the years), but, with its back against the wall in the Third Circuit, AFC has now stated unequivocally that "Cannabis Law," as defined in the Security Agreement (Dkt. 2-1 at 7-8), includes federal drug laws and waived any argument to the contrary. *See Hayden Gateway, et al. v. Advanced Flower Capital et al.,* No. 25-

---

[1] Defendants Bloc Dispensary LLC ("Bloc"), SRG 1761 North Olden LLC, SRG 1474 Prospect LLC, SRG Waretown LLC, Hayden Gateway LLC, Pier Cove LLC, SRG 272 Main Street LLC, and SRG Hi Park LLC are referred to herein collectively as "Justice" or "Defendants." Plaintiffs Advanced Flower Capital, Inc. and AFC Agent LLC are referred to collectively as "AFC" or "Plaintiffs."

02061 (3d Cir.), Dkt. 58 at 3 (AFC: "*First*, 'Cannabis Law' is not limited to state and local law alone. It also covers 'any . . . rule of law or legal process or any other order of . . . any Governmental Authority, in each case related to the cultivation, manufacture, development, distribution, or sale of cannabis.'"). Accordingly, the liens it seeks to declare as valid in its complaint either exist or fail to exist based on the application of federal drug laws.

AFC ignores this problem. Instead, in urging remand, AFC's letter focuses entirely on rebutting an argument in support of removal that Justice did not make: that the federal question presented here relates to potential affirmative defenses based on federal illegality. If that were Justice's basis for removal, then AFC might have a point. But that is not the basis for removal. Rather, the reason this case presents a federal question sufficient to confer jurisdiction is that AFC's own loan documents expressly incorporate a question of federal law, such that enforcement of AFC's contract necessarily requires resolution of a federal question.

AFC now seeks to foreclose upon assets that are within the "Cannabis Law" carve out because they clearly violate federal drug laws. As explained above, AFC unambiguously represented to the Third Circuit that the term "Cannabis Law," as defined in the contract, includes federal drug laws "ensur[ing] that AFC does not take a security interest in property that Applicable Law or Cannabis Law forbids it from holding, including under state and federal drug laws." *See Id.*, Dkt. 58 at 3.

2

Accordingly, when AFC filed a lawsuit in state court seeking a declaration that it has valid and enforceable liens under the Security Agreement, AFC necessarily raised a federal question as to precisely what liens federal law allows AFC to hold. This Court cannot adjudicate AFC's claim for declaratory judgment without resolving that question of federal law. Therefore, and as set forth below, *Grable* jurisdiction exists here because Plaintiffs' contracts expressly incorporate a federal question.[2]

## **RELEVANT BACKGROUND**

### A.    **Procedural History**

As the Court is aware, this action is closely related to parallel litigation pending before the Court, captioned *Hayden Gateway et al. v. Advanced Flower Capital et al.*, No. 3:25-cv-02789-ZNQ-JBD (D.N.J.). Before AFC commenced the instant action in state court, AFC first moved this Court (unsuccessfully) in the parallel litigation for "clarification" that "the PI Order does not limit AFC's right to exercise its contractual rights and remedies if Plaintiffs fail to pay their loan in full when the loan matures." *Id.*, Dkt. 135-1 at 1.

Oral argument on AFC's appeal in the *Hayden* matter took place on March 3,

---

[2] Complete diversity exists between the parties, and thus AFC could have filed its lawsuit in this Court, had it been inclined. Instead, AFC chose to file its foreclosure action in state court, which was its prerogative, subject to Defendants' statutory right to remove.

3

2026. The Third Circuit focused the argument exclusively on the illegality question, an issue it had raised *sua sponte,* having first called for supplemental briefing on the question of "whether a federal court may enforce an agreement that involves activities that violate federal law." *Hayden Gateway, et al. v. Advanced Flower Capital et al.,* No. 25-02061 (3d Cir.), Dkt. 45.  The Third Circuit had recently remanded another cannabis-related case to the District Court for a determination about whether the agreement at issue violated federal law, noting that it did not care that neither party had raised the issue as an affirmative defense.  *See Apical Biotek, LLC v. Maitri Holdings, LLC*, No. 25-1396, 2026 WL 177927, at *2 n.5 (3d Cir. Jan. 22, 2026).  In a concurrence, Judge Matey noted that "an 'unlawful' agreement 'can convey no rights in any Court to either party, and will not be enforced by decisions at law or by decree here in favour of one against the other of persons equally culpable.'" *Id.* at *3 n.3 (Matey, J., concurring) (quoting *Armstrong v. Armstrong* (1834) 40 Eng. Rep. 18, 25 (Lord Brougham LC)).

At oral argument, the Third Circuit expressed serious skepticism at AFC's position that its Credit Agreement was not illegal. In response to AFC's argument that Defendants could repay the loan without using cannabis proceeds, Judge Shwartz highlighted that the agreement sounded like money laundering: "Nothing illegal about using drug money to pay off a financing agreement that's allowing the company to continue? That sounds like money laundering, no?" *Id.*, Dkt. 56 at 31-

4

32; *see also id.* (questioning how the financing agreement was not "in furtherance the promotion of a specified unlawful activity under [Section] 1956"). Judge Phipps pointed out that AFC's defense that such marijuana money-laundering cases are not prosecuted was "not dispositive" on whether the agreements were illegal under federal law." *Id.* at 32. And Judge Phipps also noted the inconsistency of AFC's position that only the parties' reopening agreement was illegal but not the Credit Agreement, making clear that he "see these as dominos. They either fall together or they stand up together." *Id.* at 10-11.

In its efforts to address the Third Circuit's concerns, AFC made the representations quoted above about the nature of its liens, and further told the Third Circuit that if the question of federal illegality was to be addressed, Judge Matey's concurrence highlighted that the issue would be binding on state courts under the Supremacy Clause. *Id.* at 10 (AFC making clear that "because it's a federal law Supremacy Clause-type issue, the state court would absolutely be prohibited from granting relief that violates the CSA").

Perhaps reading the room at oral argument, AFC has aggressively tried to avoid the Third Circuit or this Court from addressing illegality, arguing that it should instead be resolved "by state courts in future proceedings." *Hayden Gateway, et al. v. Advanced Flower Capital et al.,* No. 25-02061 (3d Cir.), Dkt. 58 at 7.

The Third Circuit has yet not indicated how it will decide the issue. Before it

5

could rule, AFC moved in the Third Circuit to dismiss their own appeal entirely, claiming it was moot. *See generally Hayden Gateway LLC et al. v. Advanced Flower Capital Inc. et al.*, No. 25-02061 (3d Cir.), Dkt. 61. Appellees responded that the appeal is not moot precisely because the loan itself is illegal and because AFC has disclaimed liens in cannabis-connected properties (realty and personalty). *Id.*, Dkt. 62 at 11-22.

AFC then filed this lawsuit, in state court, on June 2, 2026.

### B.    Complaint Allegations

As alleged in the Complaint, beginning in 2021, AFC and Defendants entered into a series of contracts wherein AFC agreed to lend Defendants various amounts of money to finance the build-out, expansion, and operation of Defendants' cannabis businesses. Compl. ¶¶ 31-33. AFC's Complaint is clear that, from the beginning, the purpose of the loan was "to build and operate cannabis cultivation facilities and dispensaries." Compl. ¶ 4.

The parties' obligations were memorialized by, among other agreements, a Credit Agreement, attached as Ex. A to the Complaint; a Pledge Agreement, attached as Ex. D to the Complaint; and various other amendments and forbearance agreements, Compl. ¶¶ 40-41, 44.

Plaintiffs' Complaint alleges that, under the governing loan documents, the loan matured on the Maturity Date, that is, May 1, 2026. Compl. ¶ 45. The Complaint

alleges that the Borrowers did not make any payment on or after May 1, 2026, and thus, that the Borrowers have defaulted on their obligations. Compl. ¶¶ 50-51.

The Complaint alleges seven causes of action. Count One alleges breach of the Credit Agreement for the purported default on the Maturity Date, Compl. ¶¶ 81-91; Count Two alleges breach of the Credit Agreement for purportedly preventing Plaintiffs from exercising their inspection rights, Compl. ¶¶ 92-103; Count Three alleges breach of the Pledge Agreement for Defendants' purported failure to assemble and make the collateral available to Plaintiffs, Compl. ¶¶ 104-113; Count Five alleges breach of the implied covenant of good faith and fair dealing, Compl. ¶¶ 125-133; and Count Six alleges tortious interference with prospective economic advantage, Compl. ¶¶ 134-142.

Counts Four and Seven, meanwhile, seek declaratory judgments. Count Four, in brief, asserts that the Credit Agreement and the Pledge Agreement "are valid, binding, and enforceable contracts between Plaintiffs and Defendants," Compl. ¶ 115, and seeks "a declaration confirming their rights under the Loan Documents and Defendants' contractual consent to such relief," Compl. ¶ 124.

Count Seven requests a declaratory judgment "confirming [AFC's] rights as secured parties under N.J.S.A. 12A:9-610 to take all actions necessary to prepare for and conduct a commercially reasonable disposition of the Collateral, free from interference by Defendants," including a "Declaration that Plaintiffs are entitled,

7

under N.J.S.A. 12A:9-610, to sell, lease, license, or otherwise dispose of the Collateral after default in a commercially reasonable manner," and a "Declaration that Plaintiffs are entitled to take all actions reasonably necessary to prepare for and conduct such a disposition, including accessing the Collateral and facilitating due diligence by prospective purchasers." Compl. ¶ 153.

## C.   Key Terms Defined in the Relevant Agreements

The Security Agreement (Dkt. 2-1), which is the operative document establishing the liens that Plaintiffs seek to enforce and declare in Counts One, Four, and Seven, includes a carve-out for liens which are illegal under Cannabis Law. While AFC referenced this document in its Complaint, it is telling that AFC did not attach the Security Agreement to its Complaint because this document contains the "excluded assets" carve-out that is central to this inquiry. That carve-out is found in the document's definition of "Excluded Assets." (Dkt. 2-1, at 7-8) (defining "Excluded Assets" and specifically noting that the "Collateral" does not include "any assets to the extent pledges of and/or security interests therein are prohibited by Applicable Law or Cannabis Law").

As noted above, Plaintiffs represented to the Third Circuit that they intended the term Cannabis Law to include federal law, in order to ensure that AFC did not take liens in property that would violate state or federal drug law. *See Hayden Gateway LLC et al. v. Advanced Flower Capital Inc. et al.*, No. 25-2016 (3d Cir.),

Dkt. 58 at 3. Each count relying on the existence of a lien thus raises the question of whether the alleged lien under this very specific set of loan documents (and not necessarily umder any other such loan documents out there in the world) is consistent with federal drug laws and, if so, whether federal drug laws prohibit Plaintiffs from holding liens in the assets that form the basis of their Complaint.

## **ARGUMENT**

### B. **Removal is Proper Because This Court Has Federal Question and Supplemental Jurisdiction Over All Claims.**

"[D]efendants may generally remove civil actions from state court to federal court so long as the district court would have had subject-matter jurisdiction had the case been originally filed before it." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014).

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Section 1331 'is invoked by and large by plaintiffs pleading a cause of action created by federal law.'" *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)) ("*Grable*"). "However, causes of action under state law may nonetheless 'arise under' federal law for purposes of § 1331 if the four-pronged *Grable* test is met." *Id.* (citing *Grable*, 545 U.S. at 312).

"That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "Where all four of these requirements are met," then "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

Here, all four prongs of the *Grable* test are met, and thus, removal was proper. First, Plaintiffs' Complaint necessarily raises federal issues. Second, the federal issues are actually disputed. Third, the federal issues are substantial. Finally, the federal issues are capable of resolution in federal court without disrupting the federal-state balance.

    a. <u>By Requesting a Declaratory Judgment as to Its Liens in Borrower Assets, Plaintiffs' Complaint Necessarily Raises Embedded Federal Issues as to the CSA.</u>

"For a federal issue to be necessarily raised, 'vindication of a right under state law [must] necessarily turn[] on some construction of federal law.'" *Manning*, 772 F.3d at 163 (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983)). "The 'classic example' of this type of arising

10

under jurisdiction similarly required a determination of federal law as an essential element of the plaintiff's state law claim." *Manning*, 772 F.3d at 163 (quoting *Grable*, 545 U.S. at 312); *see also, e.g.*, *PharmaCann Penn, LLC v. BV Development Superstition RR, LLC*, 318 F. Supp. 3d 708, 712 (E.D. Pa. 2018) ("The federal question of the dispensary's lawfulness is necessarily raised because a court must consider and ultimately apply federal law in order for PharmaCann to get the relief it seeks.").

For instance, in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), shareholders sued to enjoin its investments under a state law that prevented the defendant from investing in "illegal" securities, alleging "that the securities were issued under an unconstitutional law, and hence of no validity," *id.* at 201. The defendants, in turn, maintained that "the act authorizing them was constitutional and the bonds [were] valid and desirable investments." *Id.* Thus, it was apparent from the face of the complaint that "the controversy concerns the constitutional validity of an act of Congress," and the decision in the case "depends on the determination of this issue." *Id.* at 201.

Likewise, in *Grable* itself, the plaintiff sued in state court under state law for quiet title to a property owned by the defendant. 545 U.S. at 310-11. The property in question had originally belonged to Grable, but the Internal Revenue Service had seized the property five years prior to satisfy Grable's federal tax delinquency and

11

had subsequently sold the property to the defendant. *Id.* Grable's state-law claim asserted that defendant's record title was invalid because "the IRS had failed to notify Grable of its seizure of the property in the exact manner required by [26 U.S.C.] § 6335(a)," *id.* at 311, even though Grable received actual notice of the seizure by certified mail, *id.* at 310. After the defendant removed the action to federal court, the Supreme Court upheld the removal, holding that "[w]hether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute[.]" 545 U.S. at 315. Furthermore, "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id.*

Applying those principles to AFC's admissions about its own Security Agreement, Plaintiffs' claims clearly raise embedded questions under the federal CSA and money laundering laws on the face of the Complaint.[3]  Counts Four and Seven specifically seek declaratory relief regarding liens, necessarily requiring this

---

[3] Notwithstanding the recent partial re-scheduling, cannabis remains a controlled substance, *see* 21 U.S.C. § 812, and it remains federally unlawful to manufacture, distribute, dispense, possess with intent to distribute, or dispense a controlled substance, *see* 21 U.S.C. § 841. Likewise, 18 U.S.C. § 1956 and 1957 criminalizes "laundering of monetary instruments," defined as knowingly conducting financial transactions that involve the proceeds of specified unlawful activity (which would include sale of cannabis under the CSA).

Court to adjudicate whether the liens are consistent with Cannabis Law (i.e. federal drug law).

In *PharmaCann*, for example, "[t]he deed to a property at a shopping center prohibit[ed] using the property as a drug store or for any 'unlawful' purpose." 318 F. Supp. 3d at 710-11. PharmaCann, the owner of the property, "sued in state court, seeking a declaratory judgment that it may open a medical dispensary on the property despite the deed restrictions." *Id.* at 711. The defendants, PharmaCann's predecessors in interest and the partnership entity operating the shopping center, removed the case to federal court. *Id.* The trial court found that, on its face, PharmaCann's Complaint sought a declaration of PharmaCann's rights under the governing document – that is, the property deed – to determine whether PharmaCann could proceed with its intended course of action, *i.e.*, development of a cannabis dispensary. *Id.* And because the relevant deed used the word "unlawful," "[t]hat single term opens the door for federal question jurisdiction by teeing up a fundamental clash between state and federal law in this case." *Id.* at 712.

So, too, here. Plaintiffs are pursuing "Collateral" that consists, in substantial part, of cannabis, cannabis proceeds, and property used to cultivate and sell cannabis. *See* Ex. G to Compl. at 9 (Plaintiffs' CEO emailing Defendants' CEO requesting "Cultivation Production Schedule & Demand Plan," "Cultivation planting, harvest schedule by strain with list of phenos [plant phenotypes] in facility," and "Harvest

13

details").[4] Plaintiffs seek a judicial declaration that they have valid liens in all of that cannabis-related property to take it through a foreclosure sale. *See* Compl. ¶ 65 ("The forthcoming foreclosure sale of the Borrowers' collateral under Article 9 of the Uniform Commercial Code (the 'Article 9 Sale'), which has been noticed for July 28, 2026 and will be carried out under Sections 9-611 and 9-613 of the UCC via a public auction."). Not only that, but through its various causes of action, including its request for declaratory judgment, Plaintiffs seek the express imprimatur of a court as to the legality of their actions aimed at facilitating that seizure and sale of cannabis related property. *See, e.g., id.* ¶¶ 92-103 (seeking equitable relief permitting Plaintiffs to access and inspect the cannabis and cannabis related property in anticipation of selling it); ¶¶ 114-124 (seeking a receiver to take possession and control over the cannabis and cannabis related property to prevent diversion or waste); ¶¶ 125-133 (claiming breach of duty of good faith because Defendants' allegedly deprived Plaintiffs "the ability to protect the value of" the cannabis and cannabis related property and "to conduct a commercially reasonable disposition" of it); ¶¶ 134-142 (alleging that Defendants "impaired Plaintiffs ability to market" the cannabis and cannabis-related property to prospective purchasers); ¶¶ 143-153 (seeking "a declaration confirming [Plaintiffs'] rights . . . to take all actions

---

[4] "Pheno" is a shorthand for "phenotypes," referring to the observable genetic characteristics of specific cannabis plants.

14

necessary to prepare for and conduct a commercially reasonable disposition of" the property and "to sell, lease, license, or otherwise dispose of" it).

In sum, the relief Plaintiffs seek requires interpretation and application of the phrase "Cannabis Law," which includes federal law, as well the scope of the lien in question, which, as AFC represented to the Third Circuit, was written explicitly "to ensure that AFC does not take a security interest in property that Applicable Law or Cannabis Law forbids it from holding, including under state and federal drug laws." *See Hayden Gateway LLC et al. v. Advanced Flower Capital Inc. et al.*, No. 25-2016 (3d Cir.), Dkt. 58 at 3. The Complaint and relief sought are thus inextricably intertwined with the possession, ownership, and sale of cannabis (*i.e.*, the "Collateral" under the parties' agreements).

Further, even if AFC had not written the federal question directly into its Security Agreement carve out, a court still could not declare the rights that AFC seeks it to declare unless multiple federal issues under the CSA and money laundering laws (the "Federal Issues") are first resolved.

These Federal Issues include, without limitation:

(a)    Whether Plaintiffs committed a CSA violation that prevents the Credit Agreement, Security Agreement, and the Pledge Agreement from being "valid, binding, and enforceable contracts" (*see* Counts 1, 3,4, 5 and 7)?

(b)    Whether the debt that Plaintiffs seek to declare and enforce is valid under federal law?

15

(c)    Can a lender collect a debt knowingly incurred to promote a violation of the CSA?

(d)    Do Plaintiffs' contracts give them a lien in the Collateral subject of their lawsuit given that the contracts exclude liens that violate federal drug laws (e.g., the CSA)?

(e)    Whether "Plaintiffs are secured parties with valid and enforceable security interests in the Collateral pursuant to the Credit Agreement, Security Agreement, and Pledge Agreement" given the application of the CSA?

(f)    Does the relief Plaintiffs seek involve violations of federal money laundering laws?

(g)    Does the CSA affect the validity of contracts involving the possession and sale of cannabis and property for its production and sale?

(h)    Whether the duty of good faith and fair dealing requires Defendants to participate in federally illegal conduct?

(i)    Does the CSA permit contractual provisions waiving the CSA, and if such a provision were unenforceable, could the remainder of a contract still be enforceable?

(j)    Do the federal money laundering laws—which are explicitly defined under "Applicable Law" in the loan documents—permit federal or state courts to appoint a receiver over cannabis and cannabis-related operations and assets and profits that violate the CSA?

(k)    How does the Supremacy Clause relate to or affect any of the above issues?

The federal CSA and federal money laundering laws underlie each of those issues that must be addressed in connection with the adjudicating Plaintiffs' Complaint and declaring the rights created by Plaintiffs' contracts. Indeed, the Federal Issues necessarily determine the rights that Plaintiffs seek to declare and

16

affects the availability of Plaintiffs' claims and the permissibility of Plaintiffs' requested relief – just as it did in *PharmaCann*.

Furthermore, the Third Circuit is currently grappling with many (if not all) of these Federal Issues in related litigation involving the Plaintiffs and the same contracts and cannabis at issue here. *See Hayden Gateway LLC et al. v. Advanced Flower Capital Inc. et al.*, No. 25-2016 (3d Cir.). During oral argument in that related litigation, the Third Circuit panel discussed whether the illegality of the loan documents would completely preempt any state court from even hearing AFC's claims. *See id.*, Dkt. 56 at 14 (panel noting question of whether "Supremacy Clause takes action" if case were heard in state court); *see also id.* at 23-24 (discussion as to whether the federal court "could tell a state court what to do" if the contracts in question violated the federal CSA); *id.* at 31-32 (panel asking AFC's counsel whether enforcement of their loan contracts constitutes "money laundering" under section 1956). Plaintiffs largely conceded that under the Supremacy Clause, if the Third Circuit determines that the CSA prohibits enforcement of the loan documents, AFC cannot enforce its liens in state court. *Id.* at 10 (referencing Judge Matey's concurrence in *Apical Biotek, LLC v. Maitri Holdings, LLC* and noting that "because it's a federal law Supremacy Clause-type issue, the state court would absolutely be prohibited from granting relief that violates the CSA").

17

Earlier in 2026, a Third Circuit concurrence had reiterated the CSA's primacy as to cannabis litigation:

> [T]he CSA remains "the supreme Law of the Land." 2 U.S. Const. art. VI, cl. 2. That cannot be ignored in disputes about marijuana-related contracts. The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract.

*Apical Biotek, LLC*, 2026 WL 177927, at *3 (Matey, J., concurring) (internal quotations and citations omitted). Plaintiffs cannot obtain relief from the courts until it is determined whether—as the Third Circuit has suggested—"courts cannot and will not enforce contracts violative of the CSA." *Id.*

Simply put, in addition to the Security Agreement itself, the Federal Issues dictate whether and to what extent any court can adjudicate any component of Plaintiffs' Complaint. At least one (if not all) of Plaintiffs' causes of action will first require the court to interpret and apply the CSA and federal money laundering laws. Consequently, Plaintiffs' Complaint necessarily raises federal issues. *See PharmaCann,* 318 F. Supp. 3d at 712 (holding that federal question was necessarily raised where "PharmaCann seeks a court's declaration that its marijuana dispensary is lawful, which requires a court to apply federal law to PharmaCann's chosen use"); *Kindred Hospitals East, LLC v. Local 464A United Food and Commercial Workers Union Welfare Service Benefit Fund*, No. 21-10659, 2021 WL 4452495, at *5 (D.N.J. Sept. 29, 2021) (finding federal question jurisdiction for declaratory

18

judgment claim where "[r]esolving this claim would require the Court to interpret and apply the terms of a federal statute" and noting that "[w]hether or not the underlying claim is meritorious is not a consideration at this stage").

AFC attempts to dismiss PharmaCann as a purported outlier, but it is AFC's two out-of-jurisdiction cases from the Southern and Middle District of Florida that are inapposite. In *Alter Business Advisors, LLC v. DOC App, Inc.*, 2024 WL 2991080, at *2 (M.D. Fla. June 14, 2024), the court remanded a breach of contract claim because the claim "d[id] not require any application of a federal law," and thus, "[t]hat Plaintiff's business may tangentially relate to the medical marijuana industry is of no moment[.]" Notably, the defendants had not alleged that the complaint itself, or the nature of the relief sought in it, raised a question of federal law. Instead, the defendants explicitly alleged in their Notice of Removal that the "claims brought by Plaintiff against [defendants] in the state court Complaint *are subject to federal defenses and require the interpretation and application of federal laws,* including the CSA[.]" *Id*., at *1 (M.D. Fla. Nov. 13, 2023) (emphasis added), *report and recommendation adopted in part and denied in part*, 2024 WL 2991080. Defendants neither make nor rely on any such argument here.

Likewise, in *MRC44, LLC v. City of Miami*, 561 F. Supp. 3d 1288 (S.D. Fla. 2021), the medical-cannabis-business plaintiffs sought "a judicial declaration that [plaintiffs] may lawfully operate a [d]ispensary within the City of Miami . . . without

19

obtaining a Certificate of Use from the City." *Id.* at 1291. Although the plaintiffs sought a declaration of whether their operation would be "lawful," that question was plainly addressed to state and local law on certificates of use, without regard to federal law in any way. *Id.* at 1296 ("Given the significance of the City's inaction under § 381.986(11)(b)(1), the Court finds that Plaintiffs' right to relief depends largely upon the construction or application of state law—not federal law. In other words, this case primarily involves the interaction between a municipality's failure to act and the operation of state law."). That is quite different from the contractual provisions at bar, which adopt federal law as the determinant of whether the lender has taken a lien. Moreover, the defendant in *MRC44* relied on complete preemption, rather than *Grable* jurisdiction, so the finding that the CSA does not contain language creating a federal cause of action or federal remedy under the CSA that preempts applicable state law is of no moment for the facts at bar. *Id.* at 1293-94.[5]

_____

[5] Plaintiffs' assertion that the *MRC44* court "explained that the CSA does not create a federal cause of action and therefore cannot support removal (on illegality, preemption, or other grounds)," Dkt. 10 at 4, wildly overstates that court's holding. *MRC44*. Defendants in that case argued that the CSA completely preempted any state law jurisdiction. 561 F. Supp. 3d at 1294. Complete preemption is a different exception to the well-pleaded complaint rule than *Grable*, and Defendants have not relied upon it here. Although the *MRC44* court briefly also addressed *Grable*, its analysis turned specifically on its finding that there was no conflict between the state law at issue and the CSA, and thus plaintiff's right to relief did not depend on the construction or application of federal law. *Id.* at 1295-96.

20

In short, it is true that those cases involve cannabis and removal, but they otherwise bear little resemblance to the facts here. AFC's Complaint asks a court to declare that AFC can enforce liens in cannabis, cannabis facilities, and cannabis proceeds, consistent with federal drug laws. This relief requires interpretation of federal law, as discussed above. The Court should decline AFC's invitation to rely on the inapposite out-of-district cases above, and instead follow the logic of *PharmaCann*, and find a federal question is necessarily raised on the face of Plaintiffs' Complaint.

b.  The Complaint Raises a Federal Issue That is Actually Disputed.

The second prong of the *Grable* test mandates that "[t]he dispute must be over legal interpretation of federal law," rather than a dispute about the facts or about state law. *Stout v. Novartis Pharm., Corp.*, Nos. 08-856; 07-2774; 090095; 09-916; 07655, 2009 WL 4576130, at *3 (D.N.J. Nov. 30, 2009); *see also MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 414 (3d Cir. 2015) (explaining that a lawsuit presenting "the unusually strong federal interest required to qualify for the federal forum" includes lawsuits "call[ing] into question the validity of a federal statute or the conduct of a federal actor") (citation omitted).

That requirement is met here. As the pending Third Circuit dispute involving Plaintiffs Bloc and Hayden Gateway LLC makes clear, the parties sharply disagree over the interpretation and scope of the CSA and federal money laundering laws.

21

AFC's implicit position, apparent from the face of its Complaint, is that it created a debt that is consistent with federal law and that it can create lien property interests in cannabis-connected properties and proceeds consistent with federal drug forfeiture law, 21 U.S.C. § 881, all (somehow) without a court interpreting those federal laws (or federal money laundering laws). Defendants take the opposite position, arguing that the CSA must be interpreted and applied (even if the interpretation were that the CSA ultimately was not violated and permits the liens). Thus, the relevant federal issue is actually disputed, and is best heard in a federal court by a federal judge with more familiarity with those laws. *See Grable*, 545 U.S. at 313-14; *PharmaCann*, 318 F. Supp. 3d at 713.

c.  Plaintiffs' Complaint Presents a Substantial Federal Issue.

"The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole," focusing on "not on the interests of the litigants themselves, but rather on the broader significance of the [relevant] question for the Federal Government." *Gunn*, 568 U.S. at 260. In *Smith*, for instance, "the relevant point was not the importance of the question to the parties alone but rather than importance more generally of a determination that the Government 'securities were issued under an unconstitutional law, and hence of no validity.'" *Id.* (quoting *Smith*, 255 U.S. at 201).

22

The issue presented here directly implicates important federal interests. To state the obvious, there is a substantial federal interest in ensuring compliance with the CSA and federal money laundering laws by large institutional lenders like AFC who intentionally exploit the opportunity to lend to companies that lack access to traditional banking because they engage in federally illegal activities and need capital to cultivate and sell cannabis. There is likewise a substantial federal interest in the uniform development and application of law related to the intersection of the CSA, federal money laundering laws, and state licensed drug operations. *See PharmaCann*, 318 F. Supp. 3d at 713 (finding substantiality requirement met where "the need to pursue certainty on the legal status of marijuana dispensaries looms large," and "the issues at hand counsel in favor of review by a court used to federal drug law and versed in principles of federalism").

These issues also extend beyond the mere interests of the parties, and should be resolved by the "experience, solicitude, and hope of uniformity that a federal forum offers." *Grable*, 545 U.S. at 312; *see also PharmaCann*, 318 F. Supp. 3d at 713 (finding substantial "federalism principles lurk[ing] in the background of this dispute" because "[i]f a court were to rule that PharmaCann's dispensary violated federal law, the Supremacy Clause could cast doubt on the validity of dozens of state marijuana schemes"). The issue presented in Plaintiffs' Complaint is therefore substantial.

d. This Case is Capable of Resolution Without Disrupting the Federal-State Balance.

Finally, removal will not upset the "congressionally approved balance of federal and state judicial responsibilities," *Grable*, 545 U.S. at 314. As in *PharmaCann*, "[b]ecause this kind of case is exceedingly rare, resolving the federal issue will not upset the usual division of labor between state and federal courts." 318 F. Supp. 3d at 713. Federal law must be enforced in both state and federal courts, and the federal government has a substantial interest in ensuring the uniform application of federal criminal law. The Third Circuit's recent decision in *Apical Biotek*, for example, indicates that federal courts may declare how federal law operates for these claims. *See* 2026 WL 177927, at *2 n.5 (remanding to the federal district court to determine illegality of a cannabis-related contract notwithstanding that neither side raised the issue as an affirmative defense).

This issue is niche and specific: due to the unique legal status of medical marijuana, this case will not expand "arising under" jurisdiction or create a new and substantial category of removable actions. Rather, it will be limited to cases that specifically address the unique legal situation posed when a lender drafts contracts containing federal law carve-outs, and then attempts to enforce a lien in property that is federally illegal (and involves a court ordering a receiver to take possession of property and proceeds that also violate federal law). If anything, removal best protects the federal-state balance in that it prevents AFC from taking one position in

24

federal court, only to turn around and take the opposite one in state court, which it has plainly done with this case and the related case currently pending before the Third Circuit.

The relief sought by Plaintiffs also has important implications for future foreclosure/UCC/etc. actions impacting liens in cannabis companies and production. Plaintiffs' Complaint, therefore, satisfies prong four of the *Grable* test. *See, e.g., Gremo v. Bayer Corp.*, 469 F. Supp. 3d 240, 248 & n.3 (D.N.J. 2020) (discussing court's prior denial of remand where Plaintiff's complaint stated "claims that necessarily depend on resolution of a substantial question of federal law," namely, that "the Defendants have or may have failed to comply with all federal standards and requirements applicable to the sale of" gadolinium-based contrast agents).

For all of these reasons, this action was legitimately removed pursuant to 28 U.S.C. § 1331 because it presents one or more federal questions.[6]

### C. All Other Requirements For Proper Removal Have Been Satisfied.

All other necessary requirements for removal have been met under 28 U.S.C.

---

[6] This Court should also exercise supplemental jurisdiction over any remaining state law claims under 28 U.S.C. § 1367(a) because Plaintiffs' claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Plaintiffs' state law claims and common law claims arise out of the same alleged conduct that forms the basis for Counts One, Four and Seven, the claims that present federal questions. Thus, this Court should exercise federal question jurisdiction over Counts One, Four and Seven, and supplemental jurisdiction over the remaining Counts.

§ 1446. The Notice of Removal was timely filed within thirty days of service on Defendant Bloc. All Defendants consented to Removal. This Court is the "district court of the United States for the district and division within which [this] action is pending." 28 U.S.C. § 1446(a). And venue is proper under 28 U.S.C. § 1441(a) because the Superior Court of New Jersey, Chancery Division, Mercer County, where this action was filed, is within the District of New Jersey.

**D. AFC's Purportedly Urgent Need For Remand Is Manufactured Pretext.**

AFC claims an urgent need for quick remand because AFC is purportedly being denied injunctive relief it "was on the verge of obtaining in state court" when the case was removed. (Dkt. 10 at 5). According to AFC, Defendants are allegedly committing "flagrant breaches" of the Credit Agreement by denying AFC access to inspect the facility, and access to certain information, such that "[e]very day this case remains in federal court improperly is a day AFC cannot obtain the urgent relief it seeks[.]" (Dkt. 10 at 5).

AFC's narrative is completely false. AFC has ignored repeated invitations from Defendants to visit and inspect the facility. AFC could have been inside the facility a month ago. They can come in this week, as soon as Wednesday. There are written invitations to come. All AFC had to do is accept those offers. So, too with the information rights. Defendants are in full compliance.

The reason AFC is so intent on pretending that it is being mistreated is

26

because—as AFC neglected to mention in its June 23 letter—AFC's original preliminary injunction motion requested the state court to appoint a receiver to take control of the business based upon this manufactured crisis. When the Court examines the situation, it will see that AFC does not really want access or information, because it has already been offered those things. It is refusing to accept the offers purely to manufacture a false crisis to try to justify a receiver, a strategy that should not be rewarded.

a.  AFC is Not Being Denied Access to Inspect the Facility.

As explained below, Defendants have offered AFC multiple dates to enter and inspect, and AFC has declined to accept every one of those invitations, preferring instead to try to manufacture a pretext for a receiver. In fact, earlier today, AFC as much as admitted that it had received Defendants' prior invitations.

By way of background, during the month of May, Defendants had already agreed to permit the request for inspection. However, there had been some prior back-and-forth between the parties regarding whether Section 5.4 of the Credit Agreement giving "AFC and its representatives and agents" the right to inspect also gave AFC the right to bring Defendants' competitors into its facility. *See generally* Exhibit A.

On May 28th, AFC (through counsel) abruptly changed AFC's position, suddenly stating, for the first time, that AFC was willing to send only an AFC

27

representative. *See* Composite Exhibit B at 2. AFC's May 28th communication then demanded that Defendants confirm within two hours that the inspection could proceed the next morning (which was less than 24 hours away), or else "we will treat your non-response as a refusal." *Id.* The letter purported to reserve all rights under the U.C.C. *Id.*

On May 29th, Defendants' counsel wrote back, explaining that less than two hours to respond and 24 hours of notice was insufficient, but that AFC was welcome to inspect the following week, or the week after that, comporting with the "reasonable notice" requirement in the Credit Agreement. *See* Ex. B at 1.

Defendants placed a single, reasonable condition on the invitation for access and inspection: through counsel, Defendants asked AFC to confirm that if AFC brought Defendants' competitors into Defendants' cannabis factory, AFC would agree to ensure that those competitors respected the confidentiality of Defendants' proprietary information. That concern was not unfounded. As detailed below, AFC had previously brought competitors into Defendants' facility, allowing them to tacitly collect Defendants' proprietary information.

Instead of responding, or accepting the invitation to inspect, or even calling to discuss the concern, AFC turned around and filed its 19-page emergency motion for a preliminary injunction in state court, asking that court to appoint a receiver on the grounds that it was supposedly being denied access. (Dkt. 1-3 at 299 *et seq.*). AFC

28

had obviously already written that lengthy motion,  and proceeded to file it even after Defendants' offer of access because they are trying to force a receivership. AFC then continued to ignore Defendants' offers to inspect the facility, further evidence that the goal of inspection has been to create a manufactured problem in the hopes that a new judge unfamiliar with AFC's prior actions would award a receivership.

Defendants eliminated all ambiguity on June 12th by sending AFC a "Notice of Continued Availability for Inspection And Resolution Of Confidentiality Concerns." *See* Exhibit C. The Notice made clear that the offer to inspect on 48-hours' notice remained open. The letter ended by stating: "If AFC is acting in good faith and genuinely wishes to evaluate the physical collateral rather than score points for its litigation strategy, we are available to discuss this. If we can work through the confidentiality concerns, you can inspect as early as this coming Monday."

AFC ignored the Notice.

Defendants' concerns about confidentiality are hardly unreasonable. The last time Defendants allowed AFC to bring its competitors into its facility was over a year ago. After that inspection, a rival cannabis company called Cresco apparently gathered sufficient proprietary information about Defendants' operations to send AFC a letter of intent to purchase Defendants' assets so that AFC could get paid -- more than a year before the maturity of the loan. Defendants did not know anything about that until that letter of intent was introduced by AFC as an exhibit at the

29

previous preliminary injunction hearing before this Court. That hearing was the first time Defendants learned that AFC had used the inspection request to try to sell Defendant's business to a competitor.

The point is, Defendants had entirely well-founded concerns that AFC is planning to leverage its own inspection rights under the loan agreement into an opportunity to transfer Defendants' confidential information to a competitor. Defendants have a right not to let their competitors into the factory without restriction. The loan agreement, after all, grants the inspection rights to AFC and its "agents." It does not give inspection rights to Defendants' competitors.  AFC's refusal to give assurances that it would respect confidentiality only heightened Defendants' legitimate concerns.

Then, at 10:13 a.m. today, the day this Response came due, AFC's counsel sent Defendants a letter completely changing its tune. AFC's letter finally responded to Defendants' prior offers to inspect and states in part: "*As reflected in your prior correspondence, Justice has confirmed that it is prepared to extend the opportunity for Mr. Neville and a designated advisor to access and visit the facility.*" *See* Exhibit D (emphasis added). This latest letter proceeds to identify the proposed visitors, and represents that those visitors are "prepared to fully comply with the requirements, restrictions, and obligations set forth in Section 17.7 [the confidentiality provision] of the Credit Agreement." *Id.*

In sum, it has now become obvious to AFC that this Court (as opposed to a state court judge unfamiliar with this dispute) was going to conclude that AFC was not telling the truth about its allegation that Defendants were supposedly denying access. As of this morning, AFC has acknowledged in writing that Defendants have been offering access all along. And as of this morning, AFC has implicitly acknowledged that Defendants' confidentiality concerns were not unreasonable.

In other words, AFC deliberately manufactured a crisis as a purportedly urgent justification to remand to state court, where it apparently believes it has a better chance in front of an unsuspecting judge new to the case, and unfamiliar with AFC's conduct during the last preliminary injunction hearing.[7] Having been called on the strategy, AFC has now reversed course, and stopped pretending it had been denied access. This claim does not warrant emergent relief.

b.  AFC is Not Being Denied Any Required Information.

The other stated justification for the preliminary injunction (and receiver) is that Defendants are supposedly in breach of their obligation to respond to information requests. This assertion is equally untrue. Defendants are in full compliance with all information reporting requirements under the loan agreements.

---

[7] Notably, in AFC's original state court complaint, AFC incorrectly certified that "the foregoing matter in controversy is not the subject of a pending action or arbitration proceeding, nor is any other action or arbitration proceeding contemplated at this time." *See* Dkt. 1-3 at 35.

On a weekly basis, Defendants are required to provide and have been providing AFC with a 13-week cash flow for New Jersey. Approximately two weeks ago, AFC asked for the same information for Pennsylvania, and Defendants obliged the following week. Defendants upload their financials for each entity to a shared folder for AFC's review on a monthly basis, and do the same as to JG HoldCo on a quarterly basis.

Defendants have complied with these information requests for years, and continue to comply. To Defendants' knowledge, there have been no problems. If AFC contends that something is missing, it has never told Defendants, nor identified any problems.

While AFC's letters to this Court and its state court preliminary injunction motion are deliberately vague about what information is supposedly being withheld, the allegation can only concern AFC's request of June 5, in which AFC's CEO (Dan Neville) sent a series of questions about Defendants' cannabis plants, presumably in anticipation of foreclosure and sale. *See* Exhibit E at 2-3. The email asked, for example, for cannabis cultivation, production, planting, and harvest schedules, by cannabis strain and phenotype. *Id.* AFC also demanded METRC inventory reports, dispensary floor plans and employee listings, and salary information. *Id.* The email demanded a response by the following day. *Id.*

Defendants responded in writing by pointing out that in addition to providing

32

an unduly short time to respond, AFC had just told the Third Circuit that it has no security interest or lien in any cannabis or anything related to cannabis. AFC's Security Agreement purports to carve out cannabis and cannabis-related property, making clear that AFC (a public company trying to stay out of "illegality") has no business in anything plant-touching. *See generally* Ex. F.

In light of the hypocrisy, Defendants merely asked AFC to clarify why the cannabis-related information was required by the Credit Agreement, which seems to exclude it. The email concluded: "We are not saying we will not produce these things. Rather, our position is that are not seeing any obligation to do so, and we are going to require some additional basis to support your demand." Ex. F at 2.

AFC never responded. It never followed up, never answered Defendants' question, and never renewed its request for cannabis information. It simply dropped the matter altogether.

Instead, more than three weeks later, AFC turned around and filed an emergency motion to appoint a receiver, in part based on Defendants' purported breach of AFC's request for information. After Defendants removed, AFC then followed up with this request to remand the matter to state court, in part based on the purported urgency to address its stated concerns. AFC is engaged in gamesmanship, and its arguments fail to justify that relief.

33

## <u>CONCLUSION</u>

For the reasons stated above, this action is within the original jurisdiction of this Court, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. This Court should deny remand and maintain jurisdiction over this action.

Dated:  June 29, 2026

Respectfully submitted,

**DYNAMIS LLP**

By: */s/ Jamie Hoxie Solano*
Jamie Hoxie Solano, Esq.
NJ Bar No. 426422024
200 Connell Drive
Berkeley Heights, NJ 07922
973-295-5495
JSolano@dynamisllp.com

Michael B. Homer, Esq. (*pro hac vice* forthcoming)
Constantine Economides, Esq. (*pro hac vice* forthcoming)
175 Federal Street, Suite 1200
Boston, MA 02110
617-693-9732
MHomer@dynamisllp.com
CEconomides@dynamisllp.com

*Attorneys for Defendants*

34

## CERTIFICATE OF SERVICE

I, Jamie Hoxie Solano, do hereby certify that a copy of this motion was electronically served upon all counsel of record via CM/ECF on June 29, 2026.

*/s/ Jamie Hoxie Solano*