# EXHIBIT A

 **Outlook**

---

**Re: Information Request**

---

| | |
|---|---|
| **From** | Alexzandra Fields <alexzandra@justicecannabisco.com> |
| **Date** | Mon 5/25/2026 7:58 PM |
| **To** | Dan Neville <dan@Advancedflowercapital.com>; Bill Papatheofanis <billp@oaklandmanager.com>; Alex Hymowitz <alex.hymowitz@jgrown.com> |
| **Cc** | Gabe Katz <Gabe@Advancedflowercapital.com>; Carly Hooker <Carly@Advancedflowercapital.com>; Jon Loevy <jon@loevy.com>; Michael Kanovitz <mike@loevy.com>; mhomer@dynamisllp.com <mhomer@dynamisllp.com>; jsolano@dynamisllp.com <jsolano@dynamisllp.com> |

 **Caution**: Internal (alexzandra@justicecannabisco.com)

Sensitive Content   <u>Details</u>



<u>Safe</u> <u>Spam</u> <u>Phish</u> <u>More...</u>

Hi Dan,

You are making this process needlessly burdensome and lengthy by peppering your emails with allegations that you know are untrue. I can only assume you are trying to take advantage of me by making these assertions in our business correspondence instead of to the lawyers and the judge, which is where your ridiculous assertions should be decided. So, I have to respond to your false statements yet again. If you have any legitimate response to these rebuttals, please back it up with evidence in your response.

First, AFC did not disburse $83 million, nor anything close to that figure. The attorneys have repeatedly asked for an accounting, and you keep ducking it. The company does not owe anything approaching $100 million.

Second, AFC is clearly violating money laundering laws and clearly stole money from Justice. The DACA gave you authority to control the payments Justice makes from the bank account. The course of performance shows that Justice signed off on every payment from the account since the DACA was put in place (except for when you stole the $2 million last year). AFC is now treating the account as its own, initiating transactions out of the account without Justice's involvement or consent. That is money laundering by AFC, and by each AFC employee involved, personally. Read the federal criminal money laundering statute. It applies to anyone who initiates a transaction with knowledge that the funds are "proceeds of specified unlawful activity," which clearly includes "the manufacture, importation, sale, or distribution of a controlled substance." A court will eventually be looking into what AFC has done with the money it stole from the account, but even if AFC merely used the money to operate, that completes the crime.

It is also completely accurate to describe what AFC is doing as stealing. There is no agreement that gives AFC the right to help itself to our cash. Your new claim that you can withdraw money from our account unilaterally—despite years of performance to the contrary—because it is your "collateral" is infuriating. That money is not your collateral. Your lawyers told the Third Circuit multiple times that

AFC does not take liens in any illegal property. The proceeds of cannabis sales are illegal property. AFC knows this. So you are either intentionally lying to three federal judges or intentionally stealing. You cannot have it both ways.

The idea that AFC is trying to support the borrowers as going concerns is laughable. AFC is doing what it has consistently done: trying to starve the borrowers and cheat on the accountings. There is nothing inflated about the tax payments. They are completely in line with the 2025 taxes in both PA and NJ. AFC had no right to interfere with those tax payments. If you had an accountant look at the issue before interfering with our tax payments, and that accountant said those payments were inappropriate, please provide a declaration from that professional.  If AFC cannot back up its unilateral attack on the tax payments with a tax opinion from a neutral professional, its interference with those payments is just another abuse in a very long history of abuses by AFC, the litany of which is going to play out in litigation. You must let the company make those tax payments and reimburse the $60,000 in bounced payment fees that you so recklessly caused.

The same is true of the management payments. This is money owed for work that is absolutely needed to maintain the borrowers as going concerns, no different from salaries, electricity, or any other input to our operations. AFC knows this very well, as the course of performance always included a management fee, and AFC always allowed it to be paid under the DACA. The only thing that changed is that Justice took over the work from a different AFC borrower to whom you wanted to steer the funds. As a result, AFC has failed to pay $320,000 (for NJ) and $63,801.91 (for PA) for work that is required to preserve the assets and maximize their value. If Justice stopped work for nonpayment, as any reasonable vendor would, the assets would suffer. AFC is abusing its control over the companies.

Finally, your claim that Justice stole money from AFC is an absurd accusation that you dropped into your email as an aside to deflect from the real theft AFC is committing from the bank account. I refer you to all of the briefings in the SDNY litigation, the DNJ litigation, and the defamation case in Illinois.

Turning to your site visit demand, we are complying with the letter of the contracts. You are trying to misuse Section 5.4 for a purpose for which it was never intended. Section 5.4 allows AFC to check on the state of the facilities to make sure we are being good stewards and conforming to the covenants concerning the assets. It therefore strictly limits inspections to the "[AFC] Agent, each Lender and their duly authorized representatives or agents." It does not allow you to undermine our interests while active litigation is pending. You will note that Section 5.4 never mentions "advisors," meaning people to help you take the assets away from us, even though the term "advisors" is used in multiple other parts of the contract where advisors were actually intended. We are not refusing you access for the purposes intended in Section 5.4, and we never have. If you want to tour the facilities to check on our compliance with the covenants, make that clear and we will facilitate it. If you intend anything else, then be clear and specify it so that we can evaluate your request and ensure that we are protecting our rights. Do the same for your requests for information about the cannabis in the facility.

We have proposed an NDA to protect our legal rights and intellectual property. Contrary to your letter, Section 17.7 of the Credit Agreement expressly does not protect us for litigation, which is why an NDA is needed. You have rejected the NDA without even proposing edits, thereby slowing the process you claim to want to speed, on the pretext that we let Cresco into the facility when we were discussing selling it. But Cresco signed an NDA, which is why we let it into the facility. AFC then interfered with that NDA. You unwittingly admitted in your testimony before Judge Quraishi that you started speaking and negotiating directly with Cresco to sell it, even though those conversations violated the NDA. Although we have not yet had the benefit of discovery, we now know that those discussions occurred

before we became aware that Mr. Bossidy was a plant acting as your agent, and we therefore have a well-founded concern that you were using him in violation of the NDA and our other contracts as well.

As stated, we remain willing to admit you to the facilities with proper protections in place. As a first step, please respond to this email and specify all purposes of your visit and information request.

Regards,
Alexzandra

 Book time to meet with me

---

**From:** Dan Neville <dan@Advancedflowercapital.com>
**Sent:** Tuesday, May 19, 2026 5:04 AM
**To:** Alexzandra Fields <alexzandra@justicecannabisco.com>; Bill Papatheofanis <billp@oaklandmanager.com>; Alex Hymowitz <alex.hymowitz@jgrown.com>
**Cc:** Gabe Katz <Gabe@Advancedflowercapital.com>; Carly Hooker <Carly@Advancedflowercapital.com>; Jon Loevy <jon@loevy.com>; Michael Kanovitz <mike@loevy.com>; mhomer@dynamisllp.com <mhomer@dynamisllp.com>; jsolano@dynamisllp.com <jsolano@dynamisllp.com>
**Subject:** Re: Information Request

Alexzandra –

The unfounded allegations in your email point to various "obligations" AFC is purportedly putting on Justice Grown. In reality, we are simply asking the Company to abide by its existing and unfulfilled obligations under the Credit Agreement in exchange for AFC advancing in excess of $83 million, which was heavily negotiated and has now matured. Your litany of assertations and excuses do not relieve you of your obligation to abide by the terms of the Credit Agreement.

To be clear, we disagree with your email in its entirety, but I will address just a few of the points you raised below, rather than rehash everything.

First, AFC has never "stolen money", we have not misused the DACA, we have not violated any "applicable regulations," and we have never engaged in bank fraud or money laundering.  We have always acted in a commercially reasonable manner, especially in any action related to the DACA.  You seem to forget that you owe us well over $100 million, the loan is matured, overdue and in payment default, and your company is hopelessly insolvent.  The cash is our collateral. We of course want (as we always have) JG to continue as a going concern so we can get a better recovery when your company is inevitably sold to pay its debts, and we have continued to approve payments which are reasonable and necessary for the company's continued operations.  The only payments we have rejected are those which fall outside of that description, such as when you tried, with zero notice or discussion, to pay a highly inflated tax estimate out of our collateral to benefit your parent entity, or when you attempted to make a restricted payment to an affiliate for a new "management fee" that not only is prohibited by the credit agreement, but that has no underlying contractual basis (continuing your firm's long and documented history of removing cash from our borrowers under false pretenses).

Second, our request for information is in no way inconsistent with what we or our attorneys have ever represented, to the Third Circuit or anyone else.  Perhaps you need to take another look at the loan documents or review them with counsel that has a solid understanding of the agreements.

As to our information and inspection rights, Section 5.4 of the Credit Agreement gives AFC and its representatives and agents the right to inspect any of your assets, books and records and also gives AFC and it's advisors the right to visit properties and have the properties appraised by an appraiser of our choosing. Additionally, while cannabis is a regulated industry, New Jersey law explicitly allows for third-party visitors to cannabis facilities, mandating that licensed cannabis businesses must maintain a visitor policy and that "a visitor entering a cannabis business premises must be accompanied by an escort with a Cannabis Business Identification Card at all times, except in the consumer areas of a cannabis retailer" under NJ Admin Code Section 17:30-9.4. As you stated in your email, I have visited Justice Grown's New Jersey operations a number of times. The issues you raise now, which are unfounded based on New Jersey law or regulations, are nothing but a transparent and bad faith attempt to avoid your contractional obligations and to interfere with our rights as secured creditor.

Section 17.7 of the Credit Agreement contains a fully negotiated confidentiality agreement which protects your confidential information. We will not sign the overreaching "NDA" which you attached to your email, which has obviously been put forth for the purpose of restricting the very rights we bargained for in the loan documents and completely neutering our ability to exercise our rights. We do, however, confirm that we will fully abide by the confidentiality provisions that the parties previously fully negotiated and agreed to. We note that if you had any concerns about these provisions, you had ample opportunities to raise those concerns, such as at any of the multiple instances the loan was amended or restated over the past five years. We will not be held hostage by new demands now, after the loan's maturity when you are in payment default and owe us over $100 million.

You have also raised new issues regarding the protection of trade secrets or proprietary data. However, in October 2024 and November 2024, you personally organized site visits for the senior management team of Cresco Labs, a cannabis company that is a direct competitor, to visit Justice Grown's Pennsylvania and New Jersey operations. As a follow up to the New Jersey visit, Justice Grown provided Cresco Labs' senior leadership team with a data room containing much of the same information we are now requesting. An email chain with you organizing and coordinating follow-up from the New Jersey site visit is attached. You also toured over 4 additional competitors through your Pennsylvania operations over the last three years as you sought a buyer or equity capital for that operation. We disagree with the unsupported assertion that any of the information requested is proprietary or a trade secret; that assertion is absurd, given you personally toured no less than 5 competitors through the New Jersey and Pennsylvania operations. If you truly believe your information is a trade secret, why were you so careless with trade secrets in the past, in violation of your duties of loyalty and care? This is clearly another bad faith attempt to avoid your contractual obligations and interfere with our rights as secured creditor.

We are committed to abiding by the confidentiality obligations both sides agreed to under Section 17.7 of the Credit Agreement and commit to working in good faith to schedule visits to the facility and information requests on reasonable timelines. We demand that Justice Grown abide by it's contractual obligations as well. Let us know if you will reconsider your position on site visits and information requests, which violates our clear rights under the Credit Agreement. We reserve all rights.

Regards,

Dan

---

**From:** Alexzandra Fields <alexzandra@justicecannabisco.com>
**Sent:** Wednesday, May 13, 2026 5:39:42 PM
**To:** Dan Neville <dan@Advancedflowercapital.com>; Bill Papatheofanis <billp@oaklandmanager.com>; Alex Hymowitz <alex.hymowitz@jgrown.com>

**Cc:** Gabe Katz <Gabe@Advancedflowercapital.com>; Carly Hooker <Carly@Advancedflowercapital.com>; Jon Loevy <jon@loevy.com>
**Subject:** Re: Information Request

Hi Dan,

You continue to seek to impose obligations on our company pursuant to the prior agreements in a completely one-sided and unfair manner. For example, even as you make demands on us, you are using the DACA to steal money from our company without any legal authority, and without involving any court. That is not tenable. We have a right to protect ourselves from the lawless way AFC is behaving. Put another way, AFC cannot insist on strict compliance with the letter of thousands of pages of contracts when AFC is itself breaching them in a fundamental way - at a minimum, e.g., the covenant of good faith.

Among other things, AFC continues to tortiously misuse the DACA to control our company's legitimate expenditures and operations, in violation of applicable regulations, and all to the detriment of the value of the collateral, not to mention the rest of our company. Also, your theft of our cash flow is bank fraud and money laundering. AFC is not entitled to simply raid our bank accounts whenever it needs cash. That's what Judge Qurashi enjoined, and you have been violating that injunction.

Moreover, AFC is directly responsible for the company's inability to pay taxes, having now caused three tax payment checks to bounce. AFC also acts in bad faith by refusing our monthly $40,000 management fee to cover the exact same services that AFC previously caused us to pay to third-parties allied with AFC.

The disputes over these and other violations have been extensively documented, mostly in correspondence between Bill and Carly, so there is no need to rehash them here at length.

Regarding your request for us to allow unidentified persons to enter our cannabis facilities, you are well aware the regulators require us to exercise care in granting access. It was and remains unreasonable for you to demand that we allow unidentified person(s) into secure cannabis facilities.  Please provide the name and affiliation of any person for whom you are requesting access.

Also, given our well-founded concern that AFC continues to conspire to destroy our company and sell our assets, we are unwilling to allow any of our direct competitors access to our trade secrets and other private proprietary information. If, as we expect, you are attempting to provide our competitors with access to our proprietary information, we object. There is going to have to be a discussion, likely involving lawyers, about how our company can receive assurances that our trade secrets will be protected. At a minimum, any person or competitor who seeks to enter our facility will have to sign the NDA agreement attached to this email. Whether you like it or not, whatever rights AFC may have, those rights do not automatically trump our company's rights.

The same is true of your extra-judicial discovery requests for information about cannabis-related subjects. Given AFC's history of tortious misconduct and plotting against our company, including installing Mr. Bossidy to sabotage our operations and somehow soliciting bids from competitors behind our backs, we are understandably wary about your motives in seeking this information. We are more than a little concerned that you intend to share it with our competitors or other third parties without our consent. We are also concerned about your attempts to misuse the agreements to gain unilateral

and unfair litigation advantage outside the control and supervision of the presiding judges. We are not willing to permit that.

Whatever rights AFC has to our company's proprietary cannabis-related information, our competitors have no such rights. Neither does AFC in its capacity as a litigant against us. Please confirm that if we cooperate with your requests for this information, you will sign and honor the attached NDA.

Finally, we note that your demand for cannabis information is inconsistent with what the lawyers from Quinn Emmanual represented to the Third Circuit to attempt to prevent an illegality finding regarding debt agreements and liens concerning illegal drugs. If you are going to persist in your demand for this cannabis information, we request that you and your lawyers clarify to the Third Circuit that your lawyers were dishonest when they represented the scope and purpose of AFC's loan agreements as they relate to cannabis activities. You and your law firm have an ethical obligation to remonstrate with the judges to whom those misrepresentations were made.

We also remind you that the parties are in active litigation against each other, with cases pending before various judges. Given the expiration of the loan and the overlap of the parties' disputes with the ongoing litigation, please direct future contact through counsel.

Alexzandra


**Alexzandra Fields**
**President**


alexzandra@justicecannabisco.com

The Future of Justice Grown is Justice Cannabis Co. Learn More

---

**From:** Alexzandra Fields <alexzandra@justicecannabisco.com>
**Sent:** Tuesday, May 12, 2026 4:44 PM
**To:** Dan Neville <dan@Advancedflowercapital.com>; Bill Papatheofanis <billp@oaklandmanager.com>; Alex Hymowitz <alex.hymowitz@jgrown.com>
**Cc:** Gabe Katz <Gabe@Advancedflowercapital.com>; Carly Hooker <Carly@Advancedflowercapital.com>; Jon Loevy <jon@loevy.com>
**Subject:** Re: Information Request

Hi Dan,

We are reviewing your request and discussing the items internally. You will have our response tomorrow.

All the best,
Alexzandra


**Alexzandra Fields**
**President**


alexzandra@justicecannabisco.com

The Future of Justice Grown is Justice Cannabis Co. Learn More

---

**From:** Dan Neville <dan@Advancedflowercapital.com>
**Sent:** Monday, May 11, 2026 8:16 AM
**To:** Alexzandra Fields <alexzandra@justicecannabisco.com>; Bill Papatheofanis <billp@oaklandmanager.com>; Alex Hymowitz <alex.hymowitz@jgrown.com>
**Cc:** Gabe Katz <Gabe@Advancedflowercapital.com>; Carly Hooker <Carly@Advancedflowercapital.com>; Jon Loevy <jon@loevy.com>
**Subject:** Re: Information Request

Alexzandra,

Your refusal to grant access for an inspection of the properties, and to provide the requested information, constitute clear breaches of the plain language and requirements of the Credit Agreement. Section 5.4, which applies "until payment in full of the Obligations" under the loan—which indisputably has not occurred—requires you to allow "each Lender and their duly authorized representatives and agents" to "visit any of its properties and inspect any of its assets or books and records," and to permit "the Real Property to be appraised by an appraiser selected by Agent," so long as you have the opportunity to be present for the appraisal.

Your assertions are baseless excuses to avoid your contractual obligations. Section 5.4 gives AFC the unqualified right to "inspect any of its . . . books and records." Section 5.4 does not include exceptions to AFC's rights based on the "comfort[]" of the Borrower, ongoing litigation, or a purported need first to "understand exactly how this information will be used." Likewise, the existence of litigation between the parties — which you cite as a basis for refusal — is not an exception recognized anywhere in the Credit Agreement and provides no basis for non-compliance. And your question as to the "authority" under which AFC seeks this information is, again, Section 5.4 of the Credit Agreement, to which the borrowers agreed in order to induce AFC to lend in excess of $83 million.

Your refusal to grant access to the properties for appraisal and inspection is likewise a breach of your obligations under Section 5.4. Your invocation of regulatory disclosure requirements as a basis to exclude AFC's authorized representatives is similarly unavailing: AFC is a secured lender acting under an express contractual right, not a visitor subject to the Borrower's unilateral conditions. Your false assertions concerning AFC's supposed prior misconduct are characteristic of your overheated and baseless rhetoric, and are not worth responding to yet again. To the extent morale and productivity have declined at your businesses, it is more likely because you are unable to operate them successfully and unable to service—much less repay—many millions in debt. The assertion that a week's notice is not "commercially reasonable" is false but also irrelevant, as the notice period applies only where there is no ongoing Event of Default.

Borrowers have now refused AF'Cs contractual right to inspect the properties, conduct appraisals, and obtain books and records. Those refusals constitute breaches of the Credit Agreement and will be treated as such. AFC demands that, by May 12, 2026, Borrowers confirm in writing a date the week of May 18, 2026 on which AFC and its authorized representatives will be permitted to inspect the properties and conduct appraisals as required by Section 5.4. AFC further demands that Borrowers produce all requested books and records no later than May 15, 2026. This accommodation regarding timing should not be construed as a waiver of our contractual rights and remedies under Section 5.4. Continued refusal will leave AFC no choice but to pursue all available remedies available under the loan agreement, law, and equity. We reserve all rights.

Dan

---

**From:** Alexzandra Fields <alexzandra@justicecannabisco.com>
**Sent:** Friday, May 8, 2026 3:37 PM
**To:** Dan Neville <dan@Advancedflowercapital.com>; Bill Papatheofanis <billp@oaklandmanager.com>; Alex Hymowitz <alex.hymowitz@jgrown.com>
**Cc:** Gabe Katz <Gabe@Advancedflowercapital.com>; Carly Hooker <Carly@Advancedflowercapital.com>
**Subject:** Re: Information Request

Hi Dan,

In response to your information request email on May 5, 2026,  AFC is requesting proprietary and sensitive information that we do not feel comfortable sharing, particularly in light of the litigation between the entities. We are going to deny this request until we understand exactly how this information will be used, and under what authority AFC is demanding the information you requested. When you do so, we will consider your request.

Regarding your request for access to our facilities, after further consideration, we are declining you, your appraiser, and advisor for access to the facilities. Your insistence on visiting the site with less than one week's notice does not constitute "reasonable prior notice." Furthermore, your refusal to provide any details regarding your "advisor" is a non-starter. As you know, all visitors must be disclosed to the regulators prior to entering any of our facilities.

That aside, our decision stems from your pattern of misconduct that is increasingly difficult to reconcile with a standard professional relationship. Despite it being a year since AFC last visited our sites, we continue to deal with the fallout from AFC's previous visits. Those weren't standard inspections; they were invasive disruptions that disrupted our workflow and caused a real, measurable collapse in staff morale and productivity. The fact that these disruptions occurred while our team was still reeling from the Bossidy malfeasance made the impact significantly worse. Our people deserve to do their jobs without you sticking your literal fingers into our pots.

To protect the stability of our operations and the well-being of our personnel, I cannot permit AFC's presence at any of our locations.

Alexzandra

**Alexzandra Fields**
**President**

alexzandra@justicecannabisco.com

93 Route 37
Edgewood, Illinois 62426
JUSTICECANNABISCO.COM

The Future of Justice Grown is Justice Cannabis Co. Learn More

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender. This message contains confidential information and is intended only for the individual named. If you are not the named addressee

you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

---

**From:** Dan Neville <dan@Advancedflowercapital.com>
**Sent:** Tuesday, May 5, 2026 2:08 PM
**To:** Alexzandra Fields <alexzandra@justicecannabisco.com>; Bill Papatheofanis <billp@oaklandmanager.com>; Alex Hymowitz <alex.hymowitz@jgrown.com>
**Cc:** Gabe Katz <Gabe@Advancedflowercapital.com>; Carly Hooker <Carly@Advancedflowercapital.com>
**Subject:** Information Request

Hey Alexzandra and Bill -

Please provide the following information for the New Jersey operations by end of business Friday 5/8. Thanks in advance and let us know if you have any questions.

Regards,

Dan

- Cultivation Production Schedule & Demand Plan
- Cultivation planting, harvest schedule by strain with list of phenos in facility and avg testing
- Harvest details (yield tracker by harvest for last 6 months, AB vs. Popcorn vs. Trim by harvest for the last 6 months)
- METRC inventory reports
- Wholesale sales by Customer for last 12 months
- Wholesale sales by product type for last 12 months
- Detailed dispensary P&L by location for last 12 months
- Detail cultivation P&L for the last 12 months

This email and any attachments are confidential and may contain information that is legally privileged. If you are not the intended recipient, please promptly notify the sender and delete this message. Any unauthorized use or disclosure is prohibited. References to AFC may include its affiliates.