# COMPOSITE
# EXHIBIT B

 Outlook

## Re: Response to May 26, 2026 "Inspection of Collateral" Letter

| | |
|---|---|
| **From** | Alex Hymowitz <alex.hymowitz@jgrown.com> |
| **Date** | Fri 5/29/2026 9:04 AM |
| **To** | Jason Sternberg <jasonsternberg@quinnemanuel.com> |
| **Cc** | Jamie Solano <jsolano@dynamisllp.com>; Jon Loevy <jon@loevy.com>; Michael Kanovitz <mike@loevy.com>; Michael Homer <mhomer@dynamisllp.com> |

Mr. Sternberg,

After wasting our time for more than a week with unreasonable demands, yesterday at 4:00 PM you materially changed your client's request (now just seeking access only for Mr. Neville, and not agents of our competitors) and then gave us less than two hours to respond. That was unreasonable. The fact that we were not in position to respect your arbitrary deadline was a function of your client's' own overreaching previous demands, including the demand that we permit access to individuals you refused to identify. Had your side been more reasonable sooner, this could have been avoided.

In an effort to resolve this, despite our ongoing concerns for privacy, confidentiality and safety, we are willing to allow Dan Neville, to come to the facility later next week or the week after. This timeline gives us the required "reasonable notice" required by the agreement to have someone in the facility who will strictly guide Mr. Neville through our facility.

This offer is conditioned on Mr. Neville's agreement not to take any photographs, and that he sign the NDA previously sent, subject to any reasonable revisions through negotiation. If Mr. Neville is unwilling to sign the NDA, we will need further discussion about what AFC's concern is about the terms of the NDA, and a clear expression of AFC's intent as far as what it plans to do with any confidential proprietary information it observes and obtains.

Regards,
Alex

**Alex Hymowitz**
**Senior General Counsel**

O - 1.312.319.8569

alex.hymowitz@jgrown.com

---

**From:** Jason Sternberg <jasonsternberg@quinnemanuel.com>
**Sent:** Thursday, May 28, 2026 4:55:39 PM
**To:** Alex Hymowitz <alex.hymowitz@jgrown.com>
**Cc:** Jamie Solano <jsolano@dynamisllp.com>; Jon Loevy <jon@loevy.com>; Michael Kanovitz <mike@loevy.com>; Michael Homer <mhomer@dynamisllp.com>
**Subject:** RE: Response to May 26, 2026 "Inspection of Collateral" Letter

Apologies.  I meant to direct this email to Alex, not Alexandra.

**Jason Sternberg**
**Quinn Emanuel Urquhart & Sullivan LLP**
Direct: (786) 850-3607

---

**From:** Jason Sternberg
**Sent:** Thursday, May 28, 2026 4:55 PM
**To:** 'Alex Hymowitz' <alex.hymowitz@jgrown.com>
**Cc:** Jamie Solano <jsolano@dynamisllp.com>; Jon Loevy <jon@loevy.com>; Michael Kanovitz <mike@loevy.com>; Michael Homer <mhomer@dynamisllp.com>
**Subject:** RE: Response to May 26, 2026 "Inspection of Collateral" Letter

Alexzandra,

The individual who will be visiting the Ewing Cultivation facility tomorrow is Dan Neville, who is associated with AFC and has visited your facilities numerous times. We reject the conditions set forth in your letter and the accusations contained therein, and reserve all rights with respect to same.

Please confirm by 7:00 p.m. E.T. today that you will permit tomorrow's inspection. Given the positions expressed in your letter of earlier today, if we do not receive confirmation by that time, we will treat your non-response as a refusal.  We reserve all rights, including those under UCC s. 9-610.

**Jason Sternberg**
**Quinn Emanuel Urquhart & Sullivan LLP**
Direct: (786) 850-3607

---

**From:** Alex Hymowitz <alex.hymowitz@jgrown.com>
**Sent:** Thursday, May 28, 2026 2:38 PM
**To:** Jason Sternberg <jasonsternberg@quinnemanuel.com>
**Cc:** Jamie Solano <jsolano@dynamisllp.com>; Jon Loevy <jon@loevy.com>; Michael Kanovitz <mike@loevy.com>; Michael Homer <mhomer@dynamisllp.com>
**Subject:** Response to May 26, 2026 "Inspection of Collateral" Letter

**[EXTERNAL EMAIL from alex.hymowitz@jgrown.com]**

---

Mr. Sternberg,

Please see the attached correspondence in response to your May 26, 2026, "Inspection of Collateral" letter.

Regards,
Alex

**Alex Hymowitz**
**Senior General Counsel**

O - 1.312.319.8569

alex.hymowitz@jgrown.com



93 Route 37
Edgewood, Illinois 62426
www.justicegrown.com

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.



May 28, 2026

<u>**Via Email**</u>

Jason D. Sternberg
Quinn Emanuel Urquhart & Sullivan, LLP
2601 S. Bayshore Drive, Suite 1550
Miami, Florida 33133
jasonsternberg@quinnemanuel.com

RE:    **Response to May 26, 2026 "Inspection of Collateral" Letter**

Dear Mr. Sternberg,

This email is sent in response to your letter to Ms. Solano dated May 26, 2026.

For starters, we note that your letter completely ignores the prior correspondence on this subject, basically pretending as if it never existed. That is an unhelpful approach.

Specifically, on May 13, Ms. Fields wrote an email stating to Mr. Neville in relevant part:

> *"Regarding your request for us to allow unidentified persons to enter our cannabis facilities, you are well aware the regulators require us to exercise care in granting access. It was and remains unreasonable for you to demand that we allow unidentified person(s) into secure cannabis facilities. Please provide the name and affiliation of any person for whom you are requesting access.*

> *Also, given our well-founded concern that AFC continues to conspire to destroy our company and sell our assets, we are unwilling to allow any of our direct competitors access to our trade secrets and other private proprietary information. If, as we expect, you are attempting to provide our competitors with access to our proprietary information, we object. There is going to have to be a discussion, likely involving lawyers, about how our company can receive assurances that our trade secrets will be protected. At a minimum, any person or competitor who seeks to enter our facility will have to sign the NDA agreement attached to this email. Whether you like it or not, whatever rights AFC may have, those rights do not automatically trump our company's rights."*

Neither Mr. Neville, yourself, nor anyone else, has directly responded to these concerns. Please do so.



After Mr. Neville played more games and dodged these issues, Ms. Fields wrote again on May 25 stating in relevant part:

> "Turning to your site visit demand, we are complying with the letter of the contracts. You are trying to misuse Section 5.4 for a purpose for which it was never intended. Section 5.4 allows AFC to check on the state of the facilities to make sure we are being good stewards and conforming to the covenants concerning the assets. It therefore strictly limits inspections to the "[AFC] Agent, each Lender and their duly authorized representatives or agents." It does not allow you to undermine our interests while active litigation is pending. You will note that Section 5.4 never mentions "advisors," meaning people to help you take the assets away from us, even though the term "advisors" is used in multiple other parts of the contract where advisors were actually intended. We are not refusing you access for the purposes intended in Section 5.4, and we never have. If you want to tour the facilities to check on our compliance with the covenants, make that clear and we will facilitate it. If you intend anything else, then be clear and specify it so that we can evaluate your request and ensure that we are protecting our rights. Do the same for your requests for information about the cannabis in the facility.

> We have proposed an NDA to protect our legal rights and intellectual property. Contrary to your letter, Section 17.7 of the Credit Agreement expressly does not protect us for litigation, which is why an NDA is needed. You have rejected the NDA without even proposing edits, thereby slowing the process you claim to want to speed, on the pretext that we let Cresco into the facility when we were discussing selling it. But Cresco signed an NDA, which is why we let it into the facility. AFC then interfered with that NDA. You unwittingly admitted in your testimony before Judge Quraishi that you started speaking and negotiating directly with Cresco to sell it, even though those conversations violated the NDA. Although we have not yet had the benefit of discovery, we now know that those discussions occurred before we became aware that Mr. Bossidy was a plant acting as your agent, and we therefore have a well-founded concern that you were using him in violation of the NDA and our other contracts as well.

> As stated, we remain willing to admit you to the facilities with proper protections in place. As a first step, please respond to this email and specify all purposes of your visit and information request."

As before, your clients have ignored these reasonable attempts to protect our rights. We are therefore trying again. If your clients want to access the facility for legitimate and contractually permitted purposes, we need to resolve the following concerns.



To begin, you must identify any individuals you intend to bring into our facility, including their organizational affiliation. While the contract permits AFC and its advisors to enter upon reasonable notice to inspect for covenant compliance, it does not permit or contemplate the entry of our competitors, their agents, or their advisors. Furthermore, it does not authorize visits for purposes that would place us at a competitive disadvantage.

Given AFC's history of tortious interference, we strictly require that you disclose the identity of all proposed visitors and the specific purpose of their visit before access is granted. Your letter states that Section 5.4 of the Credit Agreement grants AFC the "unequivocal right" to visit the properties. Aside from being an overstatement, this ignores the point. You are not proposing an AFC visit. You are proposing a visit by unnamed and unidentified people – possibly our competitors – who AFC wants to bring into our facility.

You have also not addressed our concerns that you have already shared our confidential and propriety information with our competitors. Mr. Neville's email strongly suggests that you have done exactly that, claiming without basis that we supposedly agree that would be acceptable. That is false. Unless and until you identify which persons and entities you have to date provided our confidential information, it is unfair and inappropriate to ask us to allow unidentified persons into the facility.

On a related note, you have ignored our point that New Jersey has strict rules about who can enter cannabis facilities. It is inappropriate to ask us to put our license at risk by permitting entry to people who may not be authorized. In case it is not clear, we do not trust AFC. Your client's insistence that we allow unidentified people into the facility is thus not acceptable.

Finally, for all reasons previously communicated, there needs to be a protective order in place. Your letter points out that AFC is bound by certain confidentiality protections spelled out in the Credit Agreement, but that is insufficient for several reasons. First, AFC has already demonstrated its willingness to violate those provisions. Second, whichever competitors (or their agents) who you intend to bring into the facility, they have not signed the Credit Agreement, and thus are not bound by the protections. Third, the Credit Agreement is insufficient for the reasons described above and in prior emails, particularly given AFC's prior tortious behavior and its continuing unwillingness to disclose whether (and to whom) it has already disclosed our confidential information, notwithstanding the confidentiality provisions to which you cite.

These are solvable problems. We have proposed a reasonable protective order that can protect everyone's interests.  Rather than ignore it, please respond with comments so can move this forward. If you are concerned that we will not be able to reach an agreement, we can submit any disputes to the Court.



We look forward to your response. If you are serious about a site visit, we urge you to stop this pattern where you simply ignore our reasonable concerns and try to bully us with demands and instructions about how this is going to be (e.g., "the inspection will, therefore, take place on Friday, May 29, 2026, at 11:00 a.m."). We remain willing to cooperate, but only if your clients also cooperate.

Sincerely,

Alexander Hymowitz
Senior General Counsel