Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201.489.3000    201.489.1536  fax
—
New York
—
Delaware
—
Maryland
—
Texas
—
Florida
—
Washington, DC

## 100 YEARS COLE SCHOTZ P.C.

Michael R. Yellin
Member
Admitted in NJ, NY, and FL

Reply to New Jersey Office
Writer's Direct Line: 201.525.6258
Writer's E-Mail: MYellin@coleschotz.com

July 1, 2026

**VIA ECF**
Hon. Zahid N. Quraishi, U.S.D.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> **Re:**   ***Advanced Flower Capital Inc. and AFC Agent LLC v. Bloc Dispensary LLC et al.*, Case No. 3:26-cv-07332**

Dear Judge Quraishi:

We represent Plaintiffs in this matter and respectfully submit this reply letter brief in connection with the Court's Order To Show Cause why this case should not be remanded to Judge Bouer in the Mercer County Chancery Division.[1]

AFC's Complaint pleads a secured-lending dispute governed entirely by state law: breach of contract, enforcement of a pledge, and the exercise of a secured party's rights under Article 9 of the UCC.  It asks to declare AFC's rights in its Collateral and to stop Defendants from obstructing them.  It does not ask for an interpretation of the Controlled Substances Act ("CSA"), to declare any conduct lawful or unlawful under federal law, or to resolve any federal question at all.  That is the beginning and end of the *Grable* inquiry, because embedded federal question jurisdiction attaches only when a federal issue is a necessary element of the plaintiff's own claim, and none is here.  Defendants' contrary position reduces to the contention that AFC's contracts are unenforceable under federal drug law, a defense to enforcement that has never supported federal jurisdiction under *Grable*.  While Defendants' Response waxes on for thirty-four pages of argument and digression, the jurisdictional issue is a narrow one with a plain answer:  AFC's Complaint raises no federal question, and the case should be remanded.

---

[1] Capitalized terms used but not otherwise defined herein are used as defined in AFC's June 23, 2026 letter requesting an order to show cause on subject matter jurisdiction (the "June 23, 2026 Letter"). "Response" or "Resp." is Borrowers/Defendants' June 29, 2026 Response To Order To Show Cause (ECF No. 20).

71686/0001-53525084v3



Hon. Zahid N. Quraishi, U.S.D.J.
July 1, 2026
Page 2

### *Grable* Does Not Provide A Basis For Federal Jurisdiction In This Case

Defendants' removal rests entirely on the *Grable* doctrine, the exception to the settled rule that federal-question jurisdiction exists only where the plaintiff pleads a claim arising under federal law. The *Grable* doctrine is extremely narrow and disfavored, *see, e.g., Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (federal issue "almost never" necessarily raised), *aff'd*, 578 U.S. 374 (2016), and no decision has supported sustained removal where, as here, a defendant contends its preferred theory of CSA illegality "embeds" a federal question into a complaint. This case should not be the first.[2]

Defendants accurately set out the four requirements to qualify for removal under *Grable*: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Defendants' effort to invoke *Grable*, however, fails at the threshold because they cannot establish that Plaintiffs' claims "necessarily raise[]" a federal issue.

As detailed in the June 23, 2026 Letter, AFC's claims sound entirely in state contract law (Counts One through Five), state tort law (Count Six), and the state statutes (the Uniform Commercial Code) (Count Seven). They are in furtherance of AFC's effort to secure repayment of their $80-plus million loan to Defendants (excluding interest) and to compel Defendants to abide by the terms of their loan agreements, now that it has matured and defaulted. Defendants offer several arguments as to how these state law claims "necessarily" raise a federal issue, but none withstand scrutiny.

Defendants first argue that AFC's claims "seek a judicial declaration that they have valid liens in . . . cannabis-related property" and "seek the express imprimatur of a court as to the legality of their actions aimed at facilitating [their] seizure and sale of cannabis related property." (Response at 14). That describes a different lawsuit than the one AFC filed. There is no cause of action that asks the Court to declare that Plaintiffs have a lien in cannabis-related property, nor is there a cause of action that asks the Court to approve an effort to seize or sell cannabis-related property. Count Seven of the Complaint asks the Court to issue a declaratory judgment "confirming their rights as secured parties under N.J.S.A. 12A:9-610 to take all actions necessary to prepare for and conduct a commercially reasonable disposition of the Collateral, free from interference by Defendants," and Count Four asks the Court to declare that Plaintiffs are entitled to appoint a receiver over the Collateral. But as Plaintiffs themselves point out, the loan agreement expressly carves out from Plaintiffs' Collateral any property in which the federal CSA forbids

---

[2] In a footnote, Borrowers say there is "complete diversity here" and thus, while AFC had the right to file its case in state court, it was subject to Borrowers' "statutory right to remove." (*See* Resp. at 3 fn.2). The statement is gratuitous. For the avoidance of doubt, however, even though there is complete diversity, the forum defendant rule, 28 U.S.C. § 1441(b)(2), precludes removal on that basis because certain Defendants, including Bloc Dispensary, are New Jersey citizens. Thus, if the Court concludes as it should that there is no "embedded" jurisdiction under *Grable*, there is no other basis (on diversity grounds or otherwise) to retain jurisdiction.

 COLE SCHOTZ P.C.

Hon. Zahid N. Quraishi, U.S.D.J.
July 1, 2026
Page 3

Plaintiffs from holding a security interest (the "Carve Out"). Accordingly, Plaintiffs' claims for declarations of their rights in their Collateral necessarily do *not* raise an issue regarding Plaintiffs' rights in cannabis or any other property the CSA bars them from possessing or selling. Any such property is simply not the Collateral that Plaintiffs are seeking to monetize in order to recover on their loan.

Defendants also seem to argue that the Court cannot declare AFC's rights without first deciding what property does and does not fall within the Carve Out, which they say requires it to construe the CSA. But whatever line-drawing the Carve Out may one day require, it does not present a disputed question of federal law that this case necessarily raises. Nowhere does the Complaint ask for that line to be drawn. AFC does not seek a declaration that any particular asset is or is not within the Carve Out; it seeks to enforce its rights in the Collateral as that term is already defined, and to stop Defendants from obstructing them. Should a dispute ever arise over whether a specific asset falls inside or outside that definition, it is not one AFC has pleaded, and it is not before the Court. The theoretical possibility that it could occur in the future is not a basis to exercise federal jurisdiction over this case.

Indeed, even to the extent Defendants' argument can be read generously to say that the Carve Out references federal law and thus the Court needs to apply the CSA to determine the scope of AFC's collateral, that is still not enough for *Grable*. This is so because the Supreme Court has rejected the notion that the "mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." *Genelink Biosciences, Inc. v. Colby*, 722 F. Supp. 2d 592, 598 (D.N.J. 2010) (remanding, quoting *Grable*, 545 U.S. at 753). But that is the essence of Defendants' argument – that a court will "need" to apply the CSA to Plaintiffs' state law claims, so (Defendants say) the claims are necessarily federal in nature. That is not the law. *See id.* (explaining that *Grable* only applies where the court will "have to determine the meaning of" a federal law).

Finally, Defendants throw out a list of eleven supposedly "federal issues under the CSA and money laundering laws" that they say must be resolved before the Court could declare AFC's rights in the Collateral. (Response at 15-16). These include, for example, "whether the debt that Plaintiffs seek to declare and enforce is valid under federal law"; "does the relief Plaintiffs seek involve violations of federal money laundering laws"; and whether the duty of good faith and fair dealing requires Defendants to participate in "federally illegal conduct." Each of these questions is just a different iteration of Defendants' claim that the Credit Agreement and any efforts to enforce it are unlawful under federal law. None of these supposed "questions" are "necessarily raised" by Plaintiffs' claims to enforce a loan agreement governed by New York law and to exercise statutory rights afforded by the Uniform Commercial Code. Each claim rests exclusively on state-law elements – the existence of executed contracts, a May 1, 2026 maturity default, approximately $123 million in unpaid obligations, covenant breaches, and AFC's entitlement to exercise its rights as a secured party (having loaned money and received a senior security interest). If any federal question enters this case, it will enter through an illegality defense, not through anything on the face of AFC's Complaint. And that is dispositive because it is well settled that a federal question that only arises in connection with an affirmative defense cannot be a basis for federal question jurisdiction. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14 (1983) (no removal even if a "defense is anticipated in the plaintiff's

100 YEARS COLE SCHOTZ P.C.

Hon. Zahid N. Quraishi, U.S.D.J.
July 1, 2026
Page 4

complaint, and even if both parties admit that the defense is the only question truly at issue in the case").

As AFC anticipated, Defendants rely almost exclusively on *PharmaCann v. BV Development Superstition RR, LLC*, 318 F. Supp. 3d 708 (E.D. Pa. 2018) – a non-binding case in which the plaintiff asked a court on the face of its complaint to decide whether its cannabis business was "unlawful." But *PharmaCann* weakens, rather than supports, Defendants' argument. The plaintiff in that case affirmatively sought a declaration that its own proposed marijuana dispensary was not an "unlawful" use under a deed, relief that "require[d] a court to apply federal law to PharmaCann's chosen use." *Id.* at 712. Thus, unlike here, federal legality was an element of the relief the plaintiff itself sought. Defendants suggest (Response at 19) that *PharmaCann* is not an "outlier," but they are flat wrong. Indeed, every single other case in which a state law complaint was removed on the basis of purported CSA illegality was subsequently remanded. *See, e.g.*, *Mansour v. City of Jersey City*, 2024 WL 5301742, at *3-9 (D.N.J. Dec. 20, 2024) (remanding state-law claims concerning cannabis where defendants had invoked CSA illegality to remove), *report & recommendation* adopted, 2025 WL 3313015 (D.N.J. Feb. 13, 2025); *Alter Business Advisors, LLC v. DOC App, Inc.*, 2024 WL 2991080, at *2 (M.D. Fla. June 14, 2024) (remanding breach of contract action removed on the theory that the CSA "embedded" a federal question); *MRC44, LLC v. City of Miami*, 561 F. Supp. 3d 1288, 1294, 1296, 1298 (S.D. Fla. 2021) (remanding marijuana-dispensary dispute and holding that the CSA "does not provide a federal cause of action," that plaintiffs' "right to relief does not depend upon the construction or application of federal law," and that any conflict between the CSA and state law "is an issue properly left to state courts to resolve"); *cf. Connecticut v. RZ Smoke, Inc.*, 2024 WL 4501037, at *2-4 (D. Conn. Oct. 16, 2024) (remanding cannabis-hemp consumer-protection action because the purported federal question regarding the definition of "hemp" under federal law was "a defense" and a "federal law defense does not support removability").

*Mansour*, a recent decision from the District of New Jersey rejecting many of the same arguments Defendants make here, is on point and mentioned nowhere in Defendants' Response. There, as here, the plaintiffs pleaded only state-law claims, and the removing defendants argued that the CSA (via the federal Gun Control Act) was "the pivotal legal question" embedded in the complaint. *See Mansour*, 2024 WL 5301742, at *6. Facing this argument, *Mansour* conclusively rejected each element of the *Grable* analysis. Of particular note here, the court held that "[n]o essential element of Plaintiffs' claims include, incorporate, or implicate federal law," and that because the "claims can be adjudicated with reference to New Jersey state law alone," the complaint did not "necessarily raise" a federal issue. *Id.* at *4-5. It distinguished *Grable* because the plaintiffs there had "directly invoked" a federal statute "as the basis for [the] claim for relief," whereas the *Mansour* complaint "[did] not invoke any federal law or statute." *Id.* at *5. The CSA, the court explained, "is best characterized as a defense to Plaintiffs' claims . . . but such a defense is insufficient to confer *Grable* jurisdiction." *Id.* The same is true here – Plaintiffs' claims rise or fall on state contract and statutory creditor rights law, and the only parties "directly" invoking a federal law are Defendants as part of a defense.

The remaining authorities point the same way. In *Alter*, the court remanded a breach-of-contract action removed on the identical embedded CSA theory, holding the claim "d[id] not

71686/0001-53525084v3

 COLE SCHOTZ P.C.

Hon. Zahid N. Quraishi, U.S.D.J.
July 1, 2026
Page 5

require any application of a federal law" and that "[t]hat Plaintiff's business may tangentially relate to the medical marijuana industry is of no moment."   2024 WL 2991080, at *2. And *MRC44*, applying *Grable*, likewise held that the plaintiffs' "right to relief does not depend upon the construction or application of federal law," and that any CSA/state-law conflict "is an issue properly left to state courts to resolve." 561 F. Supp. 3d at 1296, 1298.  Plaintiffs' Complaint sits comfortably within this line of authority, not the *PharmaCann* outlier.

**Even If the Court Finds There is Subject Matter Jurisdiction, and It Should Not, the Court Should Still Abstain and Remand under *Burford***

Even if the Court were to find an embedded federal question in Plaintiffs' claims, and it should not, it should still decline to exercise jurisdiction and remand, pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  Under *Burford*, where adequate state-court review is available, a federal court sitting in equity should not interfere with a state's effort "to establish a coherent policy with respect to a matter of substantial public concern." *Chiropractic Am. v. LaVecchia*, 180 F.3d 99, 104 (3d Cir. 1999) (affirming *Burford* abstention by this District over a New Jersey regulatory regime).  Defendants' own theory places at the center of this case questions of (among others) who may own, control, or acquire a licensed New Jersey cannabis business and what equity interests can be pledged to secure a debt – the sort of complex, technical state regulatory questions to which *Burford* should apply.  *See id.* at 105.  In these circumstances, numerous courts faced with similar arguments have elected to abstain and remand to state court what are necessarily state law disputes.  *See Left Coast Ventures Inc. v. Bill's Nursery Inc.*, 2019 WL 6683518, at *2 (W.D. Wash. Dec. 6, 2019) ("[T]he Court's acceptance of the illegality defense here might create 'disincentives for businesses to comply with state cannabis regulations by rendering their contracts unenforceable in federal court' and could signal to those involved in the state cannabis industry 'that federal jurisdiction operates as an absolute defense to private contract claims.'" (quotation omitted)); *Gopal v. Luther*, 2022 WL 504983, at *4 (E.D. Cal. Feb. 18, 2022); *MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 376 (D. Md. 2020).

**The Court Should Not Entertain Defendants' Arguments About AFC's Business, its Pending Preliminary Injunction Application, and the Scope of the Third Circuit Proceedings, Each of Which is Irrelevant to the Jurisdictional Inquiry**

Defendants devote pages to the pending Third Circuit appeal in *Hayden Gateway*, to a narrative about AFC's lending business and interest rates, and to the merits of AFC's preliminary-injunction application. (Resp. at 3-6.)  None of it speaks to jurisdiction, and AFC will not burden the Court by attempting to set the record straight here, though it disputes Defendants' account in nearly every respect and will answer it fully, on the merits, at the appropriate time.  The reason each of these subjects is out of place is the same: none bears on whether a federal question appears on the face of AFC's Complaint.  The Third Circuit appeal concerns a different order in a different action and, in all events, goes to enforceability (if anything), not to whether a federal question is necessarily raised on the face of *this* Complaint.  AFC's business model and interest rates (Resp. at 1) raise no federal question and are beside the point.  And the access and information disputes

100 YEARS COLE SCHOTZ P.C.

Hon. Zahid N. Quraishi, U.S.D.J.
July 1, 2026
Page 6

are merits questions bearing on AFC's contractual and Article 9 rights – questions for the Chancery Division on remand, not indicia of "arising under" jurisdiction.[3]

\* \* \*

For the reasons detailed above and in the June 23, 2026 Letter, there is no federal question jurisdiction "embedded" in Plaintiffs' claims in this wholly state-law case, under the *Grable* doctrine or on any other theory. The Court should therefore remand this case to the Superior Court of New Jersey, Mercer County, Chancery Division under 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Respectfully submitted,

COLE SCHOTZ P.C.

*/s/ Michael R. Yellin*

Michael R. Yellin
Member

MRY:bf

---

[3] These arguments cut in favor of remand, in any event. Defendants contend (for instance) that under the Supremacy Clause, "the state court would absolutely be prohibited from granting relief that violates the CSA," and that any federal-illegality issue "would be binding on state courts." (Resp. 5, 17). This argument helps Plaintiffs here, because by Defendants' own account, New Jersey courts are fully able – and indeed bound – to apply the CSA and the Supremacy Clause to whatever federal-law arguments Defendants choose to raise. That is precisely why no federal forum is needed. A state-law issue does not create a federal case simply because a state court may have to consult federal law in resolving a defense.

71686/0001-53525084v3